# 22-1968

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

Jan Harris,
*Plaintiff-Appellant*,
v.
TD Ameritrade Clearing Inc.,
*Defendant-Appellee*.

On Appeal From The United States District Court
For The Southern District Of New York

OPENING BRIEF
of
Appellant Jan Harris

Jan Harris
*Pro Se Appellant*
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
(541) 207-4026

## DISCLOSURE STATEMENT

Appellant is not an attorney. No part of this document was drafted by an attorney. No attorney assisted appellant draft this document.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ..................................................... 1

ISSUES PRESENTED ......................................................................... 1

STATEMENT OF THE CASE ............................................................. 1

SUMMARY OF THE ARGUMENT .................................................... 7

    a.  Forum Selection Clauses ........................................................ 7

    b.  My State Law Claims – Present Action ................................... 8

ARGUMENT ....................................................................................... 9

    a.  Standards Of Review ............................................................. 9

    b.  Forum Selection Clauses ...................................................... 10

        1.  Arbitration Agreements ................................................... 10

            A. Federal Arbitration Act ........................................... 11

        2.  Contract Interpretation ................................................... 11

        3.  Our Arbitration Agreement ............................................. 12

    c.  My State Law Claims – Present Action ............................... 19

        1.  The District Court Erred By Usurping The Role Of The Factfinder .. 19

        2.  My Second Amended Complaint ("SAC") May Be Poorly Drafted, But It Is Not Frivolous ........................................ 21

            A. The Factual Contentions In My SAC Are Not Baseless, or The Product Of Delusion Or Fantasy .......................... 21

            B. The Causes Of Action And Relief I Seek In My SAC Are Based On Common Law Governing Agents, Trustees, And Securities Brokers ......................................... 22

    d.  Prior Legal Proceedings ...................................................... 23

    e.  Genesis of the Present Action – The Claims In My SAC ....... 29

        1.  My SAC States a Claim For An Equitable Accounting By TDAC .... 30

        2.  TDAC's Fiduciary Duties ............................................... 33

# TABLE OF CONTENTS cont.

      3. Res Judicata ........................................................................33

      4. No Statute of Limitations Has Begun To Accrue Because the Trust Has Not Been Repudiated and a Full Accounting Has Not Been Completed ........................................................................35

    f. My Motion For A Preliminary Injunction ...............................40

    g. Motion For Judicial Notice...................................................41

    h. Leave To Amend ................................................................43

CONCLUSION ............................................................................48

CERTIFICATE OF COMPLIANCE ..................................................48

CERTIFICATE OF SERVICE .........................................................49

ii

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) ............................................................. 19, 20

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ......................................................................... 30

*Atlantic Marine Const. v. US Dist. Court*,
  134 S. Ct. 568 (2013) ...................................................................... 10, 17

*Atlantic Richfield Co. v. Christian*,
  140 S. Ct. 1335 (2020) ......................................................................... 16

*Banco Safra SA-Cayman Islands Branch v. Samarco Mineracao SA*,
  No. 19-3976-cv (2d Cir. Mar. 4, 2021) .................................................. 43

*Bowen v. Massachusetts.*,
  487 U.S. 879 (1988) ............................................................................. 35

*Brown Media Corp. v. K&L Gates, LLP*,
  854 F.3d 150 (2d Cir. 2017) .................................................................... 9

*Cohen v. UBS Financial Services*,
  799 F.3d 174 (2d Cir. 2015) .................................................................. 24

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962) ............................................................................. 36

*Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*,
  810 F.3d 861 (2d Cir. 2015) .................................................................... 9

*DiTolla v. Doral Dental IPA of New York*,
  469 F.3d 271 (2d Cir. 2006) .................................................................. 36

*Elfenbein v. Gulf & Western Industries, Inc*,
  590 F.2d 445 (2d Cir. 1978) .................................................................. 44

*Erickson v. Pardus*,
  551 U.S. 89 (1990) ............................................................................... 42

iii

**Federal Cases cont.**

*Fiero v. FINRA*,
 660 F.3d 569 (2d Cir. 2011) ................................................................24

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995) ...........................................................................11

*Fletcher v. US*,
 730 F.3d 1206 (10th Cir. 2013) ....................................................37, 42

*Golden Pac. Bancorp v. F.D.I.C.*,
 273 F.3d 509 (2d Cir. 2001) ........................................................38, 39

*Great-West Life & Annuity Insurance Company v. Knudson*,
 534 U.S. 204 (2002) ...........................................................................36

*Hack v. President and Fellows of Yale College*,
 237 F.3d 81 (2d Cir. 2000) .................................................................31

*Harris v. TD Ameritrade*,
 No. 21-cv-8851-MKV (S.D.N.Y. August 18, 2022) ...............................1

*Harris v. TD Ameritrade*,
 No. 20-1960 (2d Cir. Mar. 1, 2021) .................................2, 27, 28, 29, 45

*Harris v. TD Ameritrade*,
 No. 17 cv 6033-LTS-BCM (S.D.N.Y. June 10, 2020)..........27, 28, 29, 45

*Harris v. TD Ameritrade*,
 338 F. Supp. 3d 170 (S.D.N.Y. 2018) ...............................27, 28, 29, 45

*Henry Schein v. Archer And White Sales*,
 139 S. Ct. 524 (2019)....................................................................11, 18

*Hogan v. Fischer*,
 738 F.3d 509 (2d Cir. 2013) ...............................................................31

*Hotel & Rest. Employees Union v. NY Dept. Of Parks*,
 311 F.3d 534 (2d Cir. 2002) ...............................................................43

*Humphrey v. Rav Investigative & Sec. Services Ltd.*,
 169 F. Supp. 3d 489 (S.D.N.Y. 2016) .................................................47

**Federal Cases cont.**

*Hutchison v. Deutsche Bank Sec. Inc.*,
  647 F.3d 479 (2d Cir. 2011) ................................................................... 43

*Int'l Klafter Co. v. Cont'l Cas. Co.*,
  869 F.2d 96 (2d Cir. 1989) ..................................................................... 12

*Lauro Lines s.r.l. v. Chasser*,
  490 U.S. 495 (1989) ............................................................................... 17

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ................................................................... 15

*Lawlor v. National Screen Service Corp.*,
  349 U.S. 322 (1955) ............................................................................... 34

*Livingston v. Adirondack Beverage Co.*,
  141 F.3d 434 (2d Cir. 1998) ................................................................... 21

*Michelsen v. Brush*,
  224 F. Supp. 951 (E.D.N.Y. 1963) ......................................................... 37

*Nielsen v. Rabin*,
  746 F.3d 58 (2d Cir. 2014) ..................................................................... 47

*Northrop v. Hoffman of Simsbury, Inc.*,
  134 F.3d 41 (2d Cir.1997) ...................................................................... 30

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ........................................................... 9, 10, 11

*Phillips v. Girdich*,
  408 F.3d 124 (2d Cir. 2005) ................................................................... 31

*Rothenberg v. Lincoln Farm*,
  755 F.2d 1017 (2d Cir. 1985) ................................................................. 18

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) ............................................................................... 10

*Scholastic, Inc. v. Harris*,
  259 F.3d 73 (2d Cir. 2001) ..................................................................... 32

**Federal Cases cont.**

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ................................................................................. 44

*Shoshone Indian Tribe v. US*,
    364 F.3d 1339 (Fed. Cir. 2004) ........................................................ 34, 39

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    127 S. Ct. 1184 (2007) ............................................................................ 10

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................................. 44

*Technomarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) ................................................................... 34

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000) .............................................................. 11, 12

*TD Ameritrade, Inc. v. Kelley*,
    No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021) 2, 28, 29, 40, 41

*TD Ameritrade, Inc. v. Kelley*,
    No. 15 Civ. 714 (PAC)(FM) (S.D.N.Y. Sept. 30, 2016) ............. 28, 40, 41

*Utica Mutual Ins. v. Munich Reinsurance America*,
    7 F.4th 50 (2d Cir. 2021) ........................................................................ 18

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022) ....................................................................... 10, 11

*Walker v. Schult*,
    717 F.3d 119 (2d Cir.2013) .................................................................... 47

*Wheeler v. Harper*,
    No. 1: 19-cv-09689 (MKV) (S.D.N.Y. Mar. 14, 2022) .......................... 47

*Winklevoss Capital Fund, LLC v. Shrem*,
    351 F. Supp. 3d 710 (S.D.N.Y. 2019) ............................................... 30, 42

*Winters v. City of New York*,
    No. 1: 19-cv-07271 (MKV) (S.D.N.Y. July 20, 2020) ........................... 47

## New York State Cases

*Birnbaum v. Birnbaum*,
    73 N.Y.2d 461 (1989)...............................................................33

*Ederer v. Gursky*,
    9 N.Y.3d 514 (2007)................................................................36

*Matter of Barabash*,
    31 N.Y.2d 76 (1972)................................................................39

*Matter of Zilkha*,
    174 A.D.2d 331, 334 (1st Dep't 1991) ...................................38

*Mullin v. WL Ross & Co. LLC*,
    173 A.D.3d 520 (1st Dep't 2019) ....................................31, 35

*Rozenberg v. Perlstein*,
    200 A.D.3d 915 (2d Dep't 2021) ...........................................36

*Stevens v. St. Joseph's Hospital*,
    52 A.D.2d 722 (4th Dep't 1976)......................................32, 35

*Webster v. Forest Hills Care Ctr., LLC*,
    164 A.D.3d 1499 (2d Dep't 2018) ..........................................35

*Weil v. Atl. Beach Holding Corp*,
    1 N.Y.2d 20 (1956).................................................................37

## Other State Cases

*Bain v. Pulley*,
    201 Va. 398, 111 S.E.2d 287 (1959) ......................................34

*In re Charles C. Wells Revocable Trust*,
    734 N.W.2d 323, 15 Neb. App. 624 (Ct. App. 2007) .............38

## U.S. Statutes

9 U.S.C. § 1 et seq. [Federal Arbitration Act]...................................4

9 U.S.C. § 2 ........................................................................11

15 U.S.C. § 78a et seq. [Exchange Act 1934] ...............................24

15 U.S.C. § 78aa(a) ...........................................................27

28 U.S.C. § 1332 ...........................................................1, 27

28 U.S.C. § 1291 ...............................................................1

## Rules and Regulations

17 C.F.R. § 240.15c3-3, SEC Rule 15c3-3 .........................27, 29, 39, 45, 46

FINRA Rule 2268.......................................................13, 15, 16, 43

FINRA Rule 12203.......................................................24, 25, 26

FINRA Rule 12504.......................................................45

## SEC Administrative

*In the Matter of Merrill Lynch*, et.al.,

    Exchange Act Rel. No. 78141 (June 23, 2016) ......................................46

## Treatise And Restatements

Restatement (Second) of Agency (1958) ............................22, 32, 33, 37, 40

Restatement (Third) of Agency (2006) ........................................21, 22, 32

Restatement (Second) of Trusts (1959)...........................................17, 32, 40

Restatement (Third) of Trusts (2012) ........................................................32

1 Am. Jur., Accounts and Accounting........................................................34

Bogert, The Law of Trusts and Trustees (1995) .........................................38

1 D. Dobbs, Law of Remedies (1993)..........................................................35

## JURISDICTIONAL STATEMENT

The basis for federal jurisdiction in the district court was 28 U.S.C. §

1332; the amount in controversy is over $75,000.00 and the parties diverse.

On August 18, 2022, the district court issued its final Judgment. (SAppx. at

002) [ECF 37(Judgment)]. I filed a timely notice of appeal on September 8,

2022, Fed. R. App. P. 4. (SAppx.. at 004) [ECF 38 (Notice of Appeal)].

This court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court correctly interpreted our arbitration agreement
found in ¶ 12 of our Client Agreement.

2. Whether a statute of limitations has run on my right to an accounting by
Appellee TDAC of the funds and securities TDAC is purporting to hold on
my behalf as shown by my current (May 2021-present) account statements.

3. Whether an arbitration in 2011 or 2013 precludes me from seeking aid
from a court or arbitrator to obtain an accounting by Appellee TDAC of the
funds and securities TDAC is purporting to hold on my behalf as shown by
my current (May 2021-present) account statements.

## STATEMENT OF THE CASE

This appeal is from a final Judgment by the Honorable Mary Kay

Vyskocil dated August 18, 2022 which dismissed my Second Amended

Complaint without prejudice. (SAppx. at 002) [ECF 37 (Judgment)];

*Harris v. TD Ameritrade Clearing Inc*., No. 1: 21-cv-8851 (MKV)

(S.D.N.Y. Aug. 18, 2022).

1

Appellee TD Ameritrade Clearing Inc. ("TDAC") holds my funds and fully paid securities in trust for me. Both state and federal law recognize TDAC and I are in a fiduciary relationship. (Appx. I at 0027-0045) [ECF 9 ¶¶ 1-4, 10, 12, 13, 14, 17-45]. A decade of investigation and litigation capped by two March 2021 court decisions,[1] convinced me that the credits TDAC is making to my 2021 (and now 2022) account statements for 2,420,000 shares of Bancorp International Group Inc. ("Bancorp") represent impossible transactions.[2] (Appx. I at 0040-0047) [ECF 9, ¶¶ 49-66].

On June 20, 2021, as page 2 of my May 2021 account statements directed, I notified TDAC in writing of errors and omissions in my May 2021 account statements. TDAC did not respond to my letter or correct my accounts. (Appx. I at 0047) [ECF 9, ¶ 67].

On August 1, 2021 I submitted a Statement of Claim to the Financial Industry Regulatory Authority ("FINRA")'s Arbitration Forum to require TDAC to provide an accounting and adjust my accounts accordingly to correct the errors and omission in my account statements. (Appx. I at 0047)

---

[1]    *Harris v. TD Ameritrade Inc*., No. 20-1960 (2d Cir. Mar. 1, 2021); *TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021).

[2]    I have four accounts with TDAC. Three of the four accounts were originally opened with, and held by Scottrade Inc. but became TDAC accounts when TDAC acquired Scottrade in February 2018.

[ECF 9, ¶ 68]. On August 5, 2021, the FINRA Case Administrator notified me that "the claims [I] alleged in [my August 1, 2021] statement of claim are not eligible for arbitration." (Appx. I at 0048) [ECF 9, ¶ 69].

On September 18, 2021, I made a second written demand on TDAC to correct the errors and omissions in my account statements. (Appx. I at 0048) [ECF 9, ¶ 70]. TDAC did not respond, provide me an accounting, or correct my accounts.

On October 28, 2021, I filed a Complaint in the Southern District of New York, [ECF 1]. I amended my Complaint on November 11, 2021 [ECF 4], and filed a Second Amended Complaint ("SAC") on December 9, 2021 which I served on TDAC.[3] (Appx. I at 0027-0111) [ECF 9 & Ex. 1-9].

In my SAC, I allege that the credits TDAC is making to my account statements for 2,420,000 shares of Bancorp represent impossible transactions, and the relief I am seeking in my SAC is a full accounting by TDAC, which I predict will disclose TDAC must stop depriving me of the use of my $17,236.53 TDAC debited from my accounts in 2005 to cover the cost of purchasing 2,420,000 shares of Bancorp that I placed ORDERS for, but TDAC never actually purchased. (Appx. I at 0028) [ECF 9, ¶¶ 2-4]

---

[3]     My SAC filed on December 9, 2021 is the only Complaint I served on Appellee TDAC.

On February 28, 2022 TDAC filed a Motion to Dismiss, (Appx. I at 0167) [ECF 16] and Memorandum in Support. (Appx. II at 0298) [ECF 18]. TDAC requested the court dismiss my SAC with prejudice on res judicata and statute of limitations grounds, or in the alternative without prejudice pursuant to our arbitration agreement and pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

On March 6, 2022, I filed a response objecting to TDAC's Motion to Dismiss for several reasons, including that according to the terms of our arbitration agreement, my SAC is properly filed in court; my claim for an accounting is not time barred; and no past arbitration or court proceeding bars me from seeking an accounting of the funds and securities TDAC is purporting to currently hold on my behalf. (Appx. II at 0317) [ECF 20].

On March 25, 2022 TDAC filed a reply. (Appx. II at 0421) [ECF 21].

On April 26, 2022 I filed a Motion for a Preliminary Injunction requesting the court order TDAC to immediately restore to my TDAC accounts my $17,236.53 that rightly belongs to me which TDAC has been holding in its house account for sixteen (16) years pending settlement of my purchase ORDERS for Bancorp shares through the Depository Trust Company ("DTC") settlement system. (Appx. II at 0435) [ECF 23]; (Appx. I at 0044-0047) [ECF 9, ¶¶ 58-66]; (Appx. II at 0326-0330, 0336-0338)

[ECF 20 pp. 10-14, 20-22].[4] On May 10, 2022 TDAC filed an opposition to my motion. (Appx. II at 0482) [ECF 24].

On May 11, 2022, I replied. (Appx. II at 0489) [ECF 25].

On May 23, 2022 I filed a document arguing TDAC insufficiently pled Article III standing to press for relief pursuant to the FAA. (Appx. II at 0493) [ECF 26]. On May 24, 2022 TDAC responded, clarifying in a footnote, that "the only relief sought in TDAC's motion is dismissal of this case", and that "TDAC has not requested an order compelling arbitration". (Appx. II at 0508) [ECF 27].

On July 25, 2022, in accordance with the Judge Vyskocil's rules, I filed a letter requesting a pre-motion conference for summary judgment on whether TDAC was entitled to dismissal of my SAC in favor of arbitration. (Appx. II at 0515) [ECF 30]. On July 29, 2022 I filed a letter asking the district court to clarify the court's procedures, and requested permission to supplement the record. (Appx. II at 0527) [ECF 32].

---

[4]     TDAC communicated to me TDAC's "house account" is networked to the National Securities Clearing Corporation ("NSCC") to facilitate settlement of securities transactions through the DTC/NSCC system, and that TDAC moved my $17,236.53 from my accounts into TDAC's "house account" where, I allege in my SAC, my $17,236.53 has sat for sixteen (16) years pending settlement of my 2005 purchase ORDERS for Bancorp shares through the DTC/NSCC settlement system. (Appx. I at 0039-0047, 0090) [ECF 9, ¶¶ 46-66 & Ex. 5]; (Appx. II at 0451-0453) [ECF 23, ¶¶ 17-19].

On August 1, 2022 I filed a Motion requesting the district court take judicial notice of Exhibits which I previously filed with the court in support of my SAC [ECF 9, Exhibits 1, 2, 3, 4, 6, 9], in support of my opposition to TDAC's motion to dismiss [ECF 20, Exhibits 20, 21, 22, 23], and in support of my motion for a preliminary injunction [ECF 23, Exhibits 24, 25, & 26]. (Appx. II at 0533) [ECF 34].

On August 15, 2021, TDAC filed a letter with the court complaining of many things, but made no objection to any Exhibit that I requested the Court take judicial notice of. (Appx. II at 0542) [ECF 35].

On August 18, 2022, the district court dismissed my SAC without prejudice based on the court's finding that the claims in my SAC were subject to a binding arbitration agreement. The district court branded me a serial litigant, found the claims in my SAC barred by res judicata and statute of limitations, found my "motion [for a Preliminary Injunction], like [my] suit itself, [to be] highly frivolous.", denied me leave to amend my SAC on futility grounds, and declared my Motion for Judicial Notice moot. (SAppx. at 006-024) [ECF 36].

## SUMMARY OF THE ARGUMENT

My diligent and tenacious decade long pursuit of a full accounting by TDAC made me an easy target for the district court to brand a serial litigant. My right to the remedy of an accounting by TDAC, and my claims of fiduciary misconduct the accounting will reveal, are not frivolous, barred by res judicata, or a statute of limitations. My suit for an accounting by TDAC is ineligible for arbitration, and properly filed in court.

### a. Forum Selection Clause

The U.S. Supreme Court describes an arbitration agreement as a specialized type of forum selection clause. When parties agree to a forum selection clause, they waive their right to challenge their preselected forums. TDAC does not dispute that we are bound by the forum selection clause found in ¶ 12 of the September 2021 Client Agreement. (Appx. I at 0122-0130) [ECF 14, Exhibit 10 (September 2021 Client Agreement), ¶¶, 1, 14(c), 12]. Despite the heading ARBITRATION, the plain language of ¶ 12 makes clear that arbitration is not the exclusive procedure, or forum we agreed to resolve our disputes in. Paragraph 12 explicitly identifies court as a forum we agreed we may use to resolve our disputes when the services of our chosen arbitration forum are not available. According to the terms of our arbitration-forum selection clause, my SAC is properly filed in court.

7

The district court misread our agreement and, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), dismissed without prejudice my SAC based on our arbitration agreement. Using 12(b)(6) to dismiss a case based on an arbitration agreement is problematic. A 12(b)(6) dismissal is a ruling on the merits. The U.S. Supreme Court is clear, when the parties' contract assigns a matter to arbitration, a court may not weigh in or resolve the dispute on the merits even if the court thinks that a party's claim on the merits is frivolous. Because the district court chose to overlook the plain language of our arbitration agreement, and erroneously dismiss my SAC based on our arbitration agreement, the district court should have refrained from weighing in on whether the claims in my SAC are frivolous; fail to state a claim; or whether res judicata or a statute of limitations apply. But the district court weighed in, branded me a serial litigant, declared my state-law claims frivolous, and ruled in the alternative that my claims are barred by res judicata and a statute of limitations.

### b. My State Law Claims – Present Action

My causes of action and the equitable remedies I seek are grounded in the common law governing fiduciaries, agents, and trustees. TDAC is a Securities and Exchange Commission ("SEC") registered FINRA member securities broker that I engaged to hold my funds and fully paid for

securities in trust for me for the purpose of buying and selling securities.

My 2011 and 2013 arbitration proceedings established a need for a full

accounting by TDAC, but TDAC has delayed providing me a full

accounting, and since October 2014 affirmatively obstructed my efforts to

obtain the aid of a court or arbitrator to order TDAC to provide me a full

accounting of the funds and securities TDAC is holding on my behalf.

My SAC alleges facts that entitle me to the equitable remedy of an

accounting by TDAC, but instead of ordering TDAC account, the district

court usurped the role of the factfinder and resolved the disputed factual

issues, in TDAC's favor, that only a full accounting by TDAC can resolve.

## ARGUMENT

### a. Standards of Review

Dismissal based on a forum selection clause is reviewed de novo.

*Phillips v. Audio Active Ltd*., 494 F.3d 378, 384 (2d Cir. 2007). Contract

interpretation is a question of law reviewed de novo. *Id*. The court "reviews

de novo a district court's grant of a motion to dismiss, including its legal

interpretation and application of a statute of limitations," *Deutsche Bank

Nat. Tr. Co. v. Quicken Loans Inc.,* 810 F.3d 861, 865 (2d Cir. 2015), and

the principles of res judicata. *Brown Media Corp. v. K&L Gates*, LLP, 854

F.3d 150, 157 (2d Cir. 2017).

**b. Forum Selection Clauses.**

"[A] valid forum-selection clause [] represents the parties' agreement as to the most proper forum," *Atlantic Marine Const. v. US Dist. Court*, 134 S. Ct. 568, 581 (2013). When parties agree to a forum selection clause, they waive the right to challenge the preselected forums. *Atlantic Marine* 134 S. Ct. at 582. To discern the meaning and scope of the forum clause, the courts "inquiry is one of contract interpretation. Hence, [the] initial focus is on the language of the [forum selection] clause." *Phillips v. Audio Active Ltd*., 494 F.3d 378, 386 (2d Cir. 2007). With respect to <u>dismissal</u> based upon a forum selection clause, the Supreme Court stated that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens". *Atlantic Marine* 134 S. Ct. at 581. Dismissal based on the doctrine of forum non conveniens "is a determination that the merits should be adjudicated elsewhere." *Sinochem Int'l Co. v. Malay. Int'l Shipping* Corp., 127 S. Ct. 1184, 1192 (2007).

**1. Arbitration Agreements**.

An arbitration agreement is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022); *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 (1974).

Arbitration clauses, like forum selection clauses are creatures of contract. *Phillips*, 494 F.3d at 387 (2d Cir. 2007). "When the parties' contract assigns a matter to arbitration, a court may not resolve the merits of the dispute even if the court thinks that a party's claim on the merits is frivolous." *Henry Schein v. Archer and White Sales*, 139 S. Ct. 524, 529 (2019).

### A. Federal Arbitration Act.

"The [Federal Arbitration Act]'s mandate is to enforce 'arbitration agreements.'" *Viking*, 142 S. Ct. at 1919; 9 U.S.C. § 2. Courts "are not at liberty to rewrite the [Federal Arbitration Act] passed by Congress" *Henry Schein*, 139 S. Ct. at 528. Courts "must interpret the Act as written, and the Act in turn requires that [courts] interpret the [parties] contract as written." *Henry Schein*, 139 S. Ct. at 529. "[A] court may not override the [parties] contract." *Henry Schein*, 139 S. Ct. at 529. The court's task is to implement the parties' preferences between judicial and arbitral forums. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942-46 (1995).

### 2. Contract Interpretation.

The primary goal of contract interpretation is to determine and enforce the intent of the parties. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000). Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself.

*Terwilliger*, 206 F.3d at 245. The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract. *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989). Instead, a court must consider a contract as a whole and, if possible, give effect to every part of the contract. *Terwilliger*, 206 F.3d at 245. When a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction. *Terwilliger*, 206 F.3d at 245. The court should avoid interpreting contract provisions that lead to unreasonable or absurd results that are obviously inconsistent with the parties' intent. *Terwilliger*, 206 F.3d at 245.

### 3. **Our Arbitration Agreement.**

The Current (September 2021) Client Agreement is binding on both TDAC and myself (¶ 1), and it contains a valid and enforceable arbitration-forum selection clause (¶ 12). (Appx. I at 0122, 0129) [ECF 14, Ex. 10 (September 2021 Client Agreement (¶¶ 1, 12)].[5]

---

[5] The current (September 2021) Client Agreement is incorporated by reference in my SAC, (Appx. I at 0031) [ECF 9, ¶ 12]. I refer to it in my Opposition to TDAC Motion to Dismiss. (Appx. II at 0330-0333) [ECF 20, pp. 14-17]. The current Client Agreement states ". . .any and all other agreements if any, between me and you and your affiliates, not inconsistent with this Agreement will remain in full force and effect, and if there are any conflicts between this Agreement and any attachments or other agreements, this Agreement shall prevail" (¶ 14(c)), (Appx. I at 0130).

12

TDAC misrepresented to the district court that "FINRA Arbitration Is the Exclusive Forum for Harris's Claims," and "that arbitration is the exclusive method for resolving such disputes." (Appx. II at 0311, 0313) [ECF 18, pp. 14, 16]. The district court in error adopted TDAC's rewrite of our arbitration agreement. The district court, like TDAC, read the ¶ 12 heading, ARBITRATION, and then skipped over the next 326 words to where our agreement states "I agree that any controversy between [the Parties] …shall be arbitrated". (SAppx. at 013-015) [ECF 36, pp.8-10].

The 326 words of our arbitration-forum selection clause that the district court, and TDAC, skipped over consists of the carefully drafted and SEC approved language of FINRA Rule 2268 that TDAC is required to include and sets forth a specific set of parameters that frame the rights of TDAC and its customers in their pre-dispute arbitration agreement.

The full text of ¶ 12 is reproduced here:

| **12. ARBITRATION** |
| --- |
| This Agreement contains a predispute arbitration clause. By signing an arbitration clause, the parties agree as follows:<br>• All parties to this Agreement are giving up their right to sue each other in court, including the right to jury trial, except as provided by the rules of the arbitration forum in which a claim is filed.<br>• Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.<br>• The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings. |

• The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

• The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.

• The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

• The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

• No person will bring a putative or certified class action to arbitration, nor seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; (2) the class is decertified; or (3) the client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate will not constitute a waiver of any rights under this Agreement except to the extent stated herein.

I agree that any controversy between you and your affiliates, any of their respective officers, directors, employees, or agents and me (including any of my officers, directors, employees, or agents) arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated and conducted under the provisions of the Code of Arbitration of the FINRA. If any party unsuccessfully resists confirmation or enforcement of an arbitration award rendered under this Agreement, then that party shall pay all costs, attorneys' fees, and expenses incurred by the other party or parties in confirming or enforcing the award. Arbitration must be initiated by service upon the other party of a written demand for arbitration or notice of intention to arbitrate. Judgment, upon any award rendered by the arbitrator, may be entered in any court having jurisdiction.

## 13. ADVICE

Of the 482 words that make up our arbitration-forum selection clause, 326, (66 percent (66%)), were drafted by FINRA—so it is reasonable to look to FINRA for the intent behind those 326 words.[6]

> Background & Discussion
> FINRA rules do not require customers to enter into agreements to arbitrate disputes with member firms, nor do FINRA rules preclude customers from pursuing relief in state or federal courts. Most member firms, however, require customers opening accounts to agree in writing to arbitrate eligible disputes concerning the account. Under FINRA rules, arbitration in the FINRA forum is required if there is a written agreement requiring FINRA arbitration or if it is requested by the customer. When member firms use mandatory arbitration clauses, FINRA rules establish minimum disclosure requirements regarding their use to help ensure customers understand these clauses, and to protect customers' rights under FINRA rules. These requirements, set forth in FINRA Rule 2268, include that any predispute arbitration clause must be highlighted in the customer agreement and immediately preceded by disclosures that the customer agreement contains such a clause and that describe the consequences of agreeing to arbitration.
> In addition, FINRA Rule 2268 prohibits any predispute arbitration agreement from including any condition that: (1) limits or contradicts the rules of any self-regulatory organization (SRO); (2) limits the ability of a party to file any claim in arbitration; (3) limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement; or (4) limits the ability of arbitrators to make any award. These requirements make clear that predispute arbitration agreements must preserve customers' rights under FINRA rules.

April 2021 FINRA Regulatory Notice 21-16 at 2 (Predispute Arbitration Agreements in Customer Agreements). (SAppx. at 027).

---

[6]  *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466-67 (2d Cir. 2010) (Evidence of industry custom and usage "is considered, as needed, to show what the parties' specialized language is fairly presumed to have meant.")

Near the beginning of ¶ 12, it states:

All parties to this Agreement are giving up their right to sue each other in court, including the right to jury trial, except as provided by the rules of the arbitration forum in which a claim is filed.

The phrase "except as provided by" is used to indicate one rule should prevail over another in any circumstance in which the two conflict.[7] That sentence alone undermines TDAC's interpretation that we agreed to resolve our disputes "exclusively" by arbitration and, when that sentence is read in context of all of ¶ 12, and the whole Client Agreement, it is obvious that TDAC's customers are not waiving their right of access to a judicial forum.

Further, Regulatory Notice 21-16 FINRA states "Most [FINRA] member firms [] require customers opening accounts to agree in writing to arbitrate <u>eligible disputes</u> concerning the account." (SAppx. at 027) [FINRA Regulatory Notice 21-16 at 2 (my underlining)]. FINRA Rule 2268 drafted by FINRA requires TDAC to include in its pre-dispute arbitration agreements this statement: "In some cases, a claim that is ineligible for arbitration may be brought in court." (SAppx. at 035) [FINRA rule 2268].

---

[7]     *Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1351 (2020) ("Thousands of statutory provisions use the phrase 'except as provided in ...' followed by a cross-reference in order to indicate that one rule should prevail over another in any circumstance in which the two conflict. Such clauses explain what happens in the case of a clash, but they do not otherwise expand or contract the scope of either provision by implication.").

TDAC is not entitled under our forum-selection clause to avoid suit altogether.[8] And TDAC contractually waived its right to challenge court as a forum we agreed to use when our dispute is ineligible for arbitration.[9] When read in its entirety then, ¶ 12 does not bind us to exclusively settle our disputes by arbitration, rather we agreed "that any [eligible] controversy . . . . shall be arbitrated and conducted under the provisions of the Code of Arbitration of the FINRA,"

The district court correctly found we have a binding arbitration agreement, but then gave no effect to sixty six percent (66%) of our binding arbitration agreement. To justify ignoring sixty-six percent (66%) of the plain language of ¶ 12, the district court refers the reader to the 2018-2021 decisions in my 2017 court case filed against TDAC and others in the Southern District of New York. (SAppx. at 013-015) [ECF 36, pp.8-10].

---

[8]  *See Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 501 (1989) ("Even assuming that the former characterization is proper, however, petitioner is obviously not entitled under the forum-selection clause of its contract to avoid suit altogether, and an entitlement to avoid suit is different in kind from an entitlement to be sued only in a particular forum."); Restatement (Second) of Trusts § 222(3); (Appx. II at 0035) [ECF 20, p.19 & n. 10].

[9]  *See Atlantic Marine* 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

The September 2021 Client Agreement, the August 5, 2021 FINRA Notice, and the April 2021 FINRA Regulatory Notice 21-16 were not before the previous courts.[10] A previous court's interpretation of similar documents, does not excuse the district court from its task to interpret the whole of ¶ 12 in our September 2021 Client Agreement.[11] Nor does a previous courts' rulings rescue the district court from its error of failing to give full effect to all the provisions of ¶ 12.[12] The district court's task was to stick to the plain language of ¶ 12 and give effect to all its provisions, even if that led the district court to an interpretation that differed from others.[13] The district court erred dismissing my SAC in favor of arbitration.

---

[10]    The district court also compares a provision of ¶ 12 from our current Client Agreement with a provision of the two documents that were before the previous courts; the first document is a 2005 Ameritrade document titled 'Terms and Conditions' and the second, an undated, unidentified, document attached to a page titled Scottrade Brokerage Account Agreement the court deems the "2005 Scottrade Agreement" (SAppx. at 013) [ECF 36, pp.8].

[11]    *See Utica Mutual Ins. v. Munich Reinsurance America*, 7 F.4th 50, 60 n.5 (2d Cir. 2021) ("To the extent a panel of this Court, in an unpublished summary order, identified ambiguity, the decision is not controlling.").

[12]    *See Rothenberg v. Lincoln Farm*, 755 F.2d 1017, 1019 (2d Cir. 1985) (finding district court erred where its interpretation "would have the effect of rendering at least one clause superfluous or meaningless").

[13]    *See supra* note 5; (Appx. I at 0130 [[ECF 14, Ex. 10, ¶ 14(c)]; *Henry Schein*, 139 S. Ct. at 531 ("It is not unheard-of for one fair-minded adjudicator to think a decision is obvious in one direction but for another fair-minded adjudicator to decide the matter the other way.")

### c. My State Law Claims – Present Action.

Because I alleged only state law claims, New York choice of law analysis governs. (Appx. II at 0432) [ECF 22, p. 2]. In New York, matters of procedure are generally governed by the law of the forum. *Id.*  In New York (and Nebraska), statutes of limitation are generally considered procedural. *Id.* Under the law of both New York and Nebraska the statute of limitations does not commence until the fiduciary has openly repudiated his trust or the relationship has been otherwise terminated. *Id.* Nebraska and New York courts, and the U.S. Supreme Court rely on the Restatements of Agency and Trusts and other treatises for guidance as to the common law. *Id.* With respect to the common laws of agency, trust, and fiduciary duties, Nebraska and New York are substantially similar, *Id.* at 3, and it is well established that the federal securities laws are interpreted by reference to the common law, including the common laws of agency and trust. *Id.*

### 1. The District Court Erred By Usurping The Role Of The Factfinder.

On a motion to dismiss, the plaintiff is given the benefit of the doubt. "[I]t is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives" rather, "the choice between or among plausible interpretations of the evidence will be a task for the factfinder," *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 190

19

(2d Cir. 2012). "Consequently, although an innocuous interpretation of the defendants' conduct may be plausible, that does not mean that the plaintiff's allegation that that conduct was culpable is not also plausible." *Id*. at 190.

In the August 18, 2022 Opinion and Order, while claiming to take facts from my SAC, and to have accepted my factual allegations as true, and to have drawn all inferences in my favor, the district court skews the facts in my SAC and creates a misimpression of the issues in dispute. For example: after branding me a serial litigant, the district court states:

> In 2005, Plaintiff purchased a total of 2,420,000 shares of Bancorp from brokerage firms Scottrade and Ameritrade for $17,236.53 SAC ¶¶ 2-3, 46; SAC, Ex. 5-6.

(SAppx. at 006-007) [ECF 36, pp.1-2].

The district court's subtle twist of the facts states the opposite of what my SAC alleges, and yet the court cites my SAC as its source for that statement. By substituting TDAC's word "PURCHASED" for my word "ORDERED" the district court usurped the roll of the factfinder and resolved, in TDAC's favor, a disputed fact that only a full accounting by TDAC can answer—whether TDAC, my agent, used my $17,236.53 as I directed and actually PURCHASED, from anybody, the 2,420,000 shares of Bancorp I placed ORDERS for in 2005, and TDAC is currently crediting to my account statements. (Appx. II at 0328-0330) [ECF 20, p. 12-14].

20

### 2. My Second Amended Complaint ("SAC") May Be Poorly Drafted, But It Is Not Frivolous.

A claim "is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998).

### A. The Factual Contentions In My SAC Are Not Baseless, Or The Product Of Delusion Or Fantasy.

The statements in my SAC, (and Exhibits 1, 2, 3, 4, 6 & 9 attached to it for the district court to take judicial notice of), affirmatively and plausibly allege my relationship with TDAC is fiduciary in two distinct respects: (1) TDAC acts as my agent-broker with respect to TDAC buying and selling securities on my behalf; (2) TDAC acts as my agent-trustee with respect to the funds and securities TDAC holds on my behalf. (Appx. I at 0038-0040) [ECF 9, (SAC) ¶¶ 37-48].[14] My current account statements evidence TDAC continues to act as my agent-trustee and has not repudiated its trust or our fiduciary relationship with respect to my funds and securities TDAC is currently holding on my behalf.

---

[14] *See* Restatement (Third) Of Agency § 1.04 (10) (2006) ("A trustee is a holder of property who is subject to fiduciary duties to deal with the property for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee. An agent-trustee is a trustee subject to the control of the settlor or of one or more beneficiaries.").

**B. The Causes Of Action And Relief I Seek In My SAC Are Based On Common Law Governing Agents, Trustees, And Securities Brokers.**

My right to maintain an action against TDAC in its fiduciary capacity, and the remedies I seek, are recognized by state and federal courts, securities regulators, and treatises on agency, trusts, and securities brokers.[15] My common law causes of action against TDAC for breach of TDAC's fiduciary duties of loyalty and care, and duty to account existed long before Congress determined it necessary to regulate the conduct of securities brokers. (Appx. I at 0032-0033, 0059-0078) [ECF 9 ¶ 17-19, & Ex. 1,2]; (Appx. II at 0333-0338) [ECF 20, pp. 17-22]; (Appx. II at 0432-0434) [ECF 22]. It is not novel to hold TDAC, a fiduciary entrusted with customer property, to the standards of conduct expected of his profession (FINRA rules), or to fiduciary duties rendered more specific, amplified, and formally expressed by law (SEC rules). (Appx. I at 0031-0038, 0059-0078) [ECF 9 pp. 14-36, 42-43, & Ex. 1 & 2].

---

[15]      *See* Restatement (Second) of Agency § 399 ("A principal whose agent has violated or threatens to violate his duties has an appropriate remedy for such violation. Such remedy may be: . .  (c) an action in equity to enforce the provisions of an express trust undertaken by the agent; (d) an action for restitution, either at law or in equity; (e) an action for an accounting; (f) an action for an injunction; (g)……"); Restatement (Third) of Agency § 8.12 cmt. b. ("An agent's fiduciary duty . . . requires the agent to maintain records of dealings on the principal's behalf and provide them to the principal upon demand.).

### d. Prior Legal Proceedings.

**TABLE 1** below represents the arbitration case(s) I filed against

TDAC where arbitrators were appointed and awards were issued.[16]

The res judicata fuss is over the arbitration proceedings in **TABLE 1**

and the two respective awards issued.

| TABLE 1.<br>ARBITRATION CASES THAT RESULTED IN AN AWARD. |
|---|
| **1A.** Award, (Appx. II at 0360) [ECF 20, Ex. 16, p. 44].<br>*Harris Kimball v Scottrade*, FINRA Case No. 11-00018 (Sept. 20, 2011),<br>(*See* Doc. No. 9, ¶¶ 51-53; Doc. No. 20, ECF pp. 22-28, Harris February<br>17, 2022 Declaration, ECF p. 35, ¶ 2, & Exhibit 16, ECF pp. 38-46). |
| **0-1B**. Withdrawn **without prejudice**:<br>*Harris-Kimball v TD Ameritrade*, FINRA Case No. 11-01467 (withdrawn<br>Oct. 10, 2011, without prejudice).<br>(*See* Doc. No. 9, ¶ 52 & n. 22. |
| **1B.** Award, (Appx. II at 0373) [ECF 20, Ex.17, p. 57].<br>*Harris v TD Ameritrade*, FINRA Case No. 13-02446 (April 1, 2014).<br>(*See* Doc. No. 9, ¶¶ 51-53; Doc. No. 20, ECF pp. 22-28, Harris February<br>17, 2022 Declaration, ECF p. 35, ¶ 2, & Exhibit 17, ECF pp. 47-58) |

---

[16]     Before 2018, Scottrade and TDAC were separate legal entities, today
they are one. For purposes of this Appeal, my 2011 and 2013 arbitration
cases in TABLE 1 are effectively three parts of a single arbitration against
TDAC that began in January 2011 and ended on April 1, 2014. I label the
independently filed arbitration cases as 1A, 0-1B, and 1B).

FINRA is regulated under the Exchange Act 1934,[17] and among other things, administers a private arbitration forum.[18] The arbitrations shown in **TABLE 1** were decided under FINRA's simplified arbitration procedures; no hearings were held, no witness testified, and TDAC's attorneys did not submit sworn attestations by any TDAC officer or third party.

FINRA reserved to itself the power to deny parties the use of its private arbitration forum to resolve their dispute. *See* FINRA Rule 12203. **TABLE 2** below shows the arbitration cases I filed between October 2014 and August 2021 where the Director of FINRA Arbitration used his discretion under FINRA Rule 12203 to make an eligibility determination and deny me the use of FINRA's arbitration forum to enforce my rights, including my right to a full accounting by TDAC of the funds and securities TDAC is currently holding on my behalf. **(**Appx. I at 0040-0043, 0047-0048) [ECF 9, ¶¶ 50-56, 68-69]; (SAppx. at 038 -041) [FINRA Notices].

---

[17]     *See Fiero v. FINRA*, 660 F.3d 569, 571 (2d Cir. 2011); ("FINRA is a 'self-regulatory organization' ('SRO') as a national securities association registered with the SEC."); *Id*. at 578 & n. 11 ("Congress's intention in adopting § 19(b)(1) was to impose on SRO's 'the same standards of policy justification that the Administrative Procedure Act imposes on the SEC.'").

[18]     *See Cohen v. UBS Financial Services, Inc*., 799 F.3d 174, 176 (2d Cir. 2015) ("FINRA is a self-regulatory organization that (among other things) sponsors an arbitration forum."). FINRA's Code of Arbitration, like all FINRA rules must be approved by the SEC.

**TABLE 2.**
**ARBITRATION CASES CLOSED WITHOUT PREJUDICE**

**0-2A.** Closed **without prejudice**: (SAppx. at 038).
*Harris v TD Ameritrade*, FINRA Case No. 14-03328 (FINRA forum denied without prejudice) (December 23, 2014).

> **December 23, 2014 Notice**
> FINRA has determined that the claims you have alleged in your statement of claim are not eligible for arbitration. Therefore, pursuant to the Customer Code Rule 12203(a) or Industry Code Rule 13203(a), we decline to accept your claim.
> Accordingly, we closed this case without prejudice and processed a refund of your filing fees. Refunds will be sent under separate cover.

(See Doc. No. 9, ¶¶ 54-55 & n. 22; Doc. No. 20, Harris February 17, 2022 Declaration, ECF p. 35, ¶ 3, & Exhibits 18, ECF pp. 59-65).

**0-2B.** Closed **without prejudice**: (SAppx. at 039).
*Harris v Scottrade*, FINRA Case No. 14-03360 (FINRA forum denied without prejudice) (February 9, 2015).

> **February 9, 2015 Notice**
> FINRA has determined that the claims you have alleged in your statement of claim are not eligible for arbitration. Therefore, pursuant to the Customer Code Rule 12203(a) or Industry Code Rule 13203(a), we decline to accept your claim.
> Accordingly, we closed this case without prejudice and processed a refund of your filing fees. Refunds will be sent under separate cover.

(See Doc. No. 9, ¶¶ 54-55 & n. 22; Doc. No. 20, Harris February 17, 2022 Declaration, ECF p. 35, ¶ 3, & Exhibits 19, ECF pp. 66-72).

| TABLE 2 cont. |
|---|
| **0-3.** Closed **without prejudice**: (SAppx. at 040). *Harris v TD Ameritrade Clearing Inc. et.al.*, FINRA Case No. 19-03724 (FINRA forum denied without prejudice) (February 21, 2020).<br><br>**February 21, 2020 Notice**<br>FINRA has determined that the claims you have alleged in your statement of claim are not eligible for arbitration because they have been previously considered in the FINRA arbitration forum and denied in FINRA arbitration cases 11-00018 and 13-02446. Pursuant to the Customer Code Rule 12203(a), we decline to accept your claim. Accordingly, we closed this case without prejudice and processed a refund of your filing fees. Refunds will be sent under separate cover.<br><br>(See Doc. No. 9, ¶ 56 & n. 24; (notice from FINRA)). |
| **0-4.** Closed **without prejudice**: (SAppx. at 041). *Harris v TD Ameritrade Clearing, Inc.*, FINRA Case No. 21-01968 (FINRA forum denied without prejudice) (August 5, 2021).<br><br>**August 5, 2021 Notice**<br>FINRA has determined that the claims you have alleged in your statement of claim are not eligible for arbitration. Therefore, pursuant to the Customer Code Rule 12203(a) or Industry Code Rule 13203(a), we decline to accept your claim.<br>Accordingly, we closed this case without prejudice and processed a refund of your filing fees. Refunds will be sent under separate cover.<br><br>(See Doc. No. 9, ¶¶ 68, 69 & Exhibit 9, ECF pp. 83-85; Doc. No. 20, ECF pp. 14-17 & Exhibit 20 (August 6, 2020, SEC Order), ECF pp. 73-82). |

**TABLE 2** above shows I have not slept on my rights.

**TABLE 2** above also shows that, unlike the February 21, 2020

FINRA Notice, the August 5, 2021 FINRA Notice does not state the claims

I submitted on August 1, 2021 were previously considered in any FINRA

26

arbitration. (SAppx. at 040, 041). What **TABLE 2** does not show is that TDAC argued for the Director to deny me the use of its arbitration forum in the two cases I filed in 2014, and then again in 2019 even after Judge Swain granted TDAC's motion to compel me to arbitrate.[19]

    **TABLE 3** below consists of five facts my SAC [ECF 9], my Opposition to TDAC's Motion to Dismiss [ECF 20], and my Motion For Preliminary Injunction [ECF 23] are premised on being undisputed because they were litigated and decided in one of my arbitration or court cases, or in a case of a TDAC customer similarly situated as me.[20]

| **TABLE 3**<br>**FACTS NOT IN DISPUTE** |
|---|
| **1.** There is no private right of action under SEC Rule 15c3-3.<br><br>*See Harris v. TD Ameritrade Inc*., 338 F. Supp. 3d 170 (S.D.N.Y. 2018) (Swain); *Harris v. TD Ameritrade Inc*., No. 17 CV 6033-LTS-BCM (S.D.N.Y. June 10, 2020); *affirmed Harris v. TD Ameritrade Inc*., No. 20-1960 (2d Cir. Mar. 1, 2021). |

---

[19]    *See Harris v. TD Ameritrade Inc*., 338 F. Supp. 3d 170 (S.D.N.Y. 2018) (Swain).

[20]    In footnote 8, the district court states "Plaintiff appears to contend that SEC Rule 15c3-3 provides her a federal cause of action for breach of fiduciary duties." (SAppx. at 019) [ECF 36, p.14 n.8]. That is not my contention. Under the section of my SAC titled JURISDICTION, I argue only that the district court has subject matter jurisdiction to hear my state-law fiduciary claims under two federal statutes, 15 U.S.C. § 78aa and 28 U.S.C. § 1332. (Appx. I at 0030) [ECF 9, ¶¶ 10, 11].

**2.** The arbitration agreement in the TDAC Client Agreement is enforceable.

*See Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170 (S.D.N.Y. 2018) (Swain); *Harris v. TD Ameritrade Inc.*, No. 17 CV 6033-LTS-BCM (S.D.N.Y. June 10, 2020); *affirmed Harris v. TD Ameritrade Inc.*, No. 20-1960 (2d Cir. Mar. 1, 2021).

**3.** The arbitration agreement in the TDAC Client Agreement is broad; all claims and controversies are presumed arbitrable.

*See Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170 (S.D.N.Y. 2018) (Swain); *Harris v. TD Ameritrade Inc.*, No. 17 CV 6033-LTS-BCM (S.D.N.Y. June 10, 2020); *affirmed Harris v. TD Ameritrade Inc.*, No. 20-1960 (2d Cir. Mar. 1, 2021).

**4.** TDAC cannot physically deliver any shares of Bancorp to any customer while a DTC global lock is in effect.

*See Harris Kimball v Scottrade*, FINRA Case No. 11-00018 (Sept. 20, 2011); *TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(FM) (S.D.N.Y. Sept. 30, 2016) *reconsidered and confirmed TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021).

**5.** A FINRA arbitrator's award ordering TDAC to purchase shares of Bancorp is an unenforceable order as long as a DTC global lock is in effect on Bancorp shares.

*See TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(FM) (S.D.N.Y. Sept. 30, 2016) *reconsidered and confirmed TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021).

### e. Genesis of the Present Action—The Claims In My SAC

Between January 2010 and March 2021 TDAC disclosed the "half-truth" that TDAC could not register in my name the shares of Bancorp credited to my accounts because of the DTC global lock on Bancorp shares. The "whole truth" was revealed on March 10, 2021.[21] The whole truth is that TDAC cannot register shares of Bancorp in any customers' name because it is impossible for TDAC to complete customers' purchase ORDERS for Bancorp shares while a DTC global lock on Bancorp shares is in effect. (Appx. I at 0040-0047) [ECF 9, ¶¶ 49-66]. The March 10, 2021 ruling in the *Kelley* case was issued nine days after the Second Circuit panel on March 1, 2021 in my case affirmed the district court's ruling that (1) SEC Rule 15c3-3 does not create a private cause of action, and (2) that my state-law causes of action against TDAC must be submitted to arbitration. Neither Judge Swain nor the Second Circuit made any ruling on the merits of my state-law claims against TDAC—they dismissed my state-law claims against TDAC without prejudice in favor of arbitration.[22]

---

[21] *See TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021).

[22] *See Harris v. TD Ameritrade Inc*., 338 F. Supp. 3d 170 (S.D.N.Y. 2018) (Swain); *Harris v. TD Ameritrade Inc*., No. 17 CV 6033-LTS-BCM (S.D.N.Y. June 10, 2020); *affirmed Harris v. TD Ameritrade Inc*., No. 20-1960 (2d Cir. Mar. 1, 2021).

TDAC's decade of obfuscation and delay in rendering to me a full accounting is a breach of TDAC's fiduciary duty to render to me a full accounting on demand. (*See* TABLES 1, 2, & 3 supra pp.23-28; (Appx. I at 0027-0028, 0040-0047) [ECF 9, ¶¶ 1-4, 49-67]. Not only has TDAC delayed for a decade rendering to me a full accounting, but between October 2014 and the present TDAC affirmatively obstructed my access to the aid of a court or arbitrator to obtain that full accounting. The remedy for TDAC's decade of obfuscation and delay of its duty to render a full accounting is simple—a court or arbitrator must order TDAC render a full accounting.[23]

1.  **My SAC States A Claim For An Equitable Accounting By TDAC**.

On a motion to dismiss, "[f]actual allegations alone are what matters" *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir.1997). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim may not be dismissed "so long as [the complaint] alleged

---

[23]     *Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) ("The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property, and, if a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property.") (citations omitted).

facts sufficient to support a meritorious legal claim." *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 89 (2d Cir. 2000). "All complaints must be read liberally," *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) "as low as the requirements are for a complaint drafted by competent counsel", *Id.*, the court reads a pro se complaint "to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). My SAC states all the necessary elements to entitle me to the remedy of a full accounting by TDAC.[24] However, TDAC's lawyers,[25] and the district court ignored my right to the remedy of an accounting by TDAC; an accounting by TDAC that is long overdue. (Appx. I at 0030-0032, 0038-0039) [ECF 9, ¶¶ 10, 12-14, 37-45]; (Appx. II at 0333-0338) [ECF 20, pp. 17-22]; (Appx. II at 0445, 0463-0465) [ECF 23, pp. 11, 29-31].

---

[24]     *Mullin v. WL Ross & Co. LLC*, 173 A.D.3d 520, 522 (1st Dep't 2019) "[T]he mere existence of a fiduciary relationship otherwise gives rise to a claim for an accounting. This right [to an accounting], as distinguished from a claim for an accounting in which there is no fiduciary relationship, does not require a showing that there is no adequate remedy at law. It is automatic and springs from the fiduciary relationship itself.").

[25]     In its Memorandum to Support its Motion to Dismiss TDAC first attempted to recast my SAC as one for breach of contract. (Appx. II at 0310) [ECF 18, p. 13]. Not until its Reply did TDAC correct course and address the allegations in my SAC of fiduciary misconduct and cite to cases decided under both New York and Nebraska law. However, TDAC never addressed my claim for an accounting or TDAC's duty to account, or TDAC's delay fully accounting. (Appx. II at 0425-0429) [ECF 21, pp. 5-9].

Under equity practices of most jurisdictions, the principal-beneficiary (me) in a fiduciary relationship may maintain an action against the fiduciary (TDAC) for an accounting.[26] The Arbitrators decisions in 2011 and 2014 denying me exclusive possession of some of the shares of Bancorp I ORDERED and fully paid for established a need for TDAC to fully disclose whether TDAC used my $17,236.53 to actually PURCHASE the 2,420,000 shares of Bancorp I ORDERED and TDAC was crediting, and continues to credit to my account statements.[27] Since January 2010, TDAC's obfuscation and litigation tactics to thwart my efforts to obtain a full accounting by TDAC, is not the behavior of a fiduciary acting in my best interests, dealing fairly with me, acting honestly, or in good faith. (Appx. I at 0027-0028, 0039-0056) [ECF 9, ¶¶ 1-4, 46-66, 71-107].

---

[26]     *See* Restatement (Second) of Agency § 381 (duty to inform); § 382 (duty to account); § 399 (remedies); Restatement (Third) of Agency § 8.12 (duty to account); Restatement (Second) of Trusts, § 172 (duty to account); § 173 (duty to inform); § 199 (remedies); Restatement (Third) of Trusts § 82 (duty to inform); § 83 (duty to account).

[27]     *See* (Appx. II at 0463-0465) [ECF 23, pp. 29-31]; *Stevens v. St. Joseph's Hospital*, 52 A.D.2d 722, 723 (4th Dep't 1976) ("The fiduciary relationship necessary to obtain an accounting is created by the plaintiff entrusting to the defendant some money or property with respect to which the defendant is bound to reveal his dealings"); *Scholastic, Inc. v. Harris*, 259 F.3d 73, 90-91 (2d Cir. 2001) (holding the voluntary transfer of financial documents or willingness to provide for an inspection or audit are no substitute for a judicially supervised accounting).

## 2. **TDAC's Fiduciary Duties**.

Misconduct by a fiduciary (TDAC) can take one of two forms; (1)

breach of the duty of loyalty (2) breach of the duty of care.

TDAC's duty of loyalty requires TDAC to act in my best interest, act in good faith, act honestly, deal fairly with me, adhere faithfully to my instructions, and refrain from doing any harmful act to me.7

(Appx. II at 0333-0335) [ECF 20, pp. 17-19).[28]

TDAC's duty of care requires TDAC to perform its fiduciary duties owed to me with the care and skill of an SEC registered FINRA member broker.11 TDAC's duty of care includes a duty to keep, and render to me on demand, a full accounting of all money or securities which TDAC received or paid out on my behalf.12

(Appx. II at 0336-0338) [ECF 20, pp. 20-22).

## 3. **Res Judicata**.

I do not dispute that res judicata can attach to claims resolved by

arbitration proceedings. The question is whether any of the claims in my

SAC are precluded by the 2011 and 2013 arbitration proceedings. (See

**TABLE 1** supra p. 23). I argued they are not. (Appx. II at 0338-0344) [ECF

20, pp. 22-28].  Even if a full accounting was had in 2011 or 2013 (which

---

[28]    *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989) ("[I]t is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect."); Restatement of Agency (Second) § 387 cmt. b (1958) (An agent's "duties of loyalty to the interests of his principal are the same as those of a trustee to his beneficiaries.").

none was), that prior "accounting" could not bar me from exercising my right to the remedy of a full accounting based on my current account statements.[29] Without the results of a current accounting by TDAC, the district court could not determine what claims I might have for fiduciary misconduct, or when that misconduct occurred.[30] (SAppx. at 015-019) [ECF 36, pp. 10-14]. "This is simple logic—how can a beneficiary [or a court] be aware of any claims unless and until an accounting has been rendered?" *Shoshone Indian Tribe v. US*, 364 F.3d 1339, 1347 (Fed. Cir. 2004).

I commenced my current action for an accounting because the March 10, 2021 decision in the *Kelley* case called into question whether the 2,420,000 credits TDAC is making to my account statements represent my equitable ownership in Bancorp, or, represent impossible transactions as the lawyers for TDAC admitted in Mr. Kelley's case.

---

[29]  *Bain v. Pulley*, 201 Va. 398, 403, 111 S.E.2d 287 (1959) ("But even if the furnishing and acceptance of these reports be considered an account stated for the respective years, it does not constitute an estoppel but is subject to impeachment for mistake or error clearly proved. 1 Mich. Jur., Accounts and Accounting, || 7, 8, p. 70; 1 Am. Jur., Accounts and Accounting, | 30 ff., p. 285 ff.").

[30]  *See Lawlor v. National Screen Service Corp*., 349 U.S. 322, 328 (1955); *Technomarine SA v. Giftports, Inc.,* 758 F.3d 493, 499 (2d Cir. 2014) ("[A] claim arising subsequent to a prior action is not barred by res judicata even if the new claim is premised on facts representing a continuance of the same course of conduct").

4. **No Statute of Limitations Has Begun To Accrue Because the Trust Has Not Been Repudiated and a Full Accounting Has Not Been Completed.**

The district court erred characterizing my SAC as seeking money damages. The fact that I seek monetary sums does not convert my claims to an action at law for damages.[31] Under the common law of New York and Nebraska, I am entitled to the remedy of an accounting to find out what TDAC did with my $17,236.53 I deposited with TDAC. (Appx. II at 0333-0338) [ECF 20, pp. 17-22].[32] My claim for an accounting "is automatic and springs from [our] fiduciary relationship itself". *Mullin v. WL Ross & Co. LLC*, 173 A.D.3d at 522.[33] A claim for money damages sounds at law,

---

[31]    *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.')

[32]    *See Webster v. Forest Hills Care Ctr., LLC*, 164 A.D.3d 1499, 1501 (2d Dep't 2018) ("[W]here, [] there is a fiduciary relationship between the parties, there is an absolute right to an accounting notwithstanding the existence of an adequate remedy at law."); *Stevens v. St. Joseph's Hospital*, 52 A.D.2d 722, 722-23 (4th Dep't 1976) "The basis for an equitable action for accounting is the existence of a fiduciary or trust relationship respecting the subject matter of the controversy. . . . The fiduciary relationship necessary to obtain an accounting is created by the plaintiff entrusting to the defendant some money or property with respect to which the defendant is bound to reveal his dealings.") (citations omitted).

[33]    1 D. Dobbs, Law of Remedies § 2.6(3), at 158 (2d ed. 1993) ("Equity [has traditionally] recognized and enforced fiduciary duties, so it naturally [gives] an accounting remedy against fiduciaries.").

*Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477 (1962), while claims seeking

an injunction, restitution, and accounting are equitable in nature.[34] "[T]he

remedy of accounting is restitutionary by definition." *Ederer v. Gursky*, 9

N.Y.3d 514, 525 (2007). "[F]or restitution to lie in equity, the action

generally must seek [] to restore to the plaintiff particular funds or property

in the defendant's possession." *Great-West Life & Annuity Insurance*

*Company v. Knudson*, 534 U.S. 204, 214 (2002). The first line of my Prayer

for Relief states: "1. An Order for TDAC to restore $17,236.53 to my

TDAC accounts.". (Appx. I at 0056) [ECF 9, p. 30]. That is a succinct

statement requesting the equitable remedies of an accounting, an injunction,

and restitution.[35] Put in long hand that sentence was intended to mean this:

If the full <u>accounting</u> by TDAC shows TDAC did not use my $17,236.53 to

actually purchase the 2,420,000 shares of Bancorp TDAC is crediting to my

current account statements, then the court must <u>enjoin</u> (stop) TDAC from

---

[34]    *See Rozenberg v. Perlstein*, 200 A.D.3d 915, 920 (2d Dep't 2021)
("Equitable claims evoke nonmonetary relief, such as the issuance of an
injunction, an accounting, or a remedy in the nature of specific performance
or reformation of a contract.").

[35]    *See DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 275-76
(2d Cir. 2006) ("Under New York law, an accounting is a distinct cause of
action rooted in equity. . . . a request for an accounting typically
accompanies a demand for restitution or other monetary relief . . in an
action for an accounting . . the remedy sought is equitable, and not legal").

depriving me of the use of my $17,236.53, which the court accomplishes by

ordering TDAC to <u>restore</u> (credit back) $17,236.53 to my accounts, i.e.

restore my access to my $17,236.53.[36]

     The fifth line in my Prayer for Relief states "5. The court grant me

other or additional relief as is just and proper." (Appx. I at 0057) [ECF 9, p.

31]. This general prayer for relief is sufficient to support a decree for an

accounting, an injunction, and restitution. *See* FRCP 54(c).[37] The district

court overlooked my right to the remedy of an accounting.[38]

---

[36]    *See* Restatement (Second) of Agency § 399 ("A principal whose agent has violated or threatens to violate his duties has an appropriate remedy for such violation. Such remedy may be: . .  (c) an action in equity to enforce the provisions of an express trust undertaken by the agent; (d) an action for restitution, either at law or in equity; (e) an action for an accounting; (f) an action for an injunction; (g)……").

[37]    *Michelsen v. Brush*, 224 F. Supp. 951, 954 (E.D.N.Y. 1963) ("Since the facts set forth in the complaint are sufficient to support a claim for the equitable relief of an accounting regardless of the prayer, the defendant's motion must be denied"); *Weil v. Atl. Beach Holding Corp.*, 1 N.Y.2d 20, 29 (1956) ("A prayer for general relief is as broad as the equitable powers of the court, and under it the court may properly shape its decree in accordance with the equities of the case.").

[38]    See *Fletcher v. US*, 730 F.3d 1206, 1214 (10th Cir. 2013) (Gorsuch, J) ("The scope of a traditional equitable accounting includes, after all, some degree of information about both receipts and disbursements"); *Id*. at 2015 ("To say that the plaintiffs have a right to an accounting, then, is to say that [the accounting] must give some sense of where money has come from and gone to."); *Id*. at 2012. ("Half of an accounting may be closer to no accounting at all.").

Under the law of both New York and Nebraska the statute of limitations does not commence until the fiduciary openly repudiates his trust or the relationship has been otherwise terminated.[39] (Appx. II at 0345-0348) [ECF 20, pp. 29-32]; (Appx. II at 0433) [ECF 22, p. 2]. The district court confused the concept of "open repudiation" with misconduct by the fiduciary while the trust is ongoing. (SAppx. at 0019-0021) [ECF 36, pp. 14-16]. Repudiation of a trust occurs when the trustee or agent, by words or conduct, denies the existence of a trust and claims the property as his own.[40]

---

[39]     *In re Charles C. Wells Revocable Trust*, 734 N.W.2d 323, 333-34, 15 Neb. App. 624 (Ct. App. 2007) ("While we have previously held that an equity action for an accounting is subject to a 4-year statute of limitations, we have found no case in Nebraska where a 4-year statute of limitations has been applied to an accounting action in connection with a trust . . . Prior cases from the Nebraska Supreme Court have recognized the general rule that the statute of limitations is tolled while a trust continues.") (citations omitted); *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518-519 (2d Cir. 2001) ("Under New York law, the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated. . . . In such cases, the statutory period is tolled between the alleged fiduciary misconduct and the date on which the fiduciary relationship is openly repudiated or otherwise ended, so that any misconduct alleged before that end date falls within the permissible temporal scope.").

.

[40]     *See Matter of Zilkha*, 174 A.D.2d 331, 334 (1st Dep't 1991) ("The statute of limitations does not commence to run in favor of a trustee until he openly repudiates the trust and asserts and exercises individual ownership over the trust property."); Bogert & Bogert, The Law of Trusts and Trustees § 951, (2d ed. 1995).

The statute of limitations begins to run only after the account is judicially settled or there is open, notorious, and unequivocal repudiation by the fiduciary of his obligation to administer the trust. *See Matter of Barabash*, 31 N.Y.2d 76, 80 (1972). Open repudiation "requires proof of a repudiation by the fiduciary which is clear and made known to the beneficiaries" *Id*.

No statute of limitations has run on my right to the remedy of a full accounting by TDAC. TDAC has not repudiated its trust. Each monthly account statement evidences TDAC confirms its role as trustee of my funds and securities and that our fiduciary relationship has not ended. (Appx. I at 0038-0040, 0087-0088) [ECF 9, ¶¶ 37-41, 47 & Ex. 4]; (Appx. I at 0138) [ECF 14, Exhibit 11, (Nov. 2021 Account Statement) (Terms and Conditions)]; (Appx. II at 0345-0348) [ECF 20, pp. 29-32].

Each monthly account statement is an implied representation by TDAC that TDAC is in possession or control of the funds and securities TDAC is crediting to my account statements, and holds them on my behalf. *See* SEC Rule 15c3-3, 17 C.F.R.§ 240.15c3-3. "Beneficiaries of a trust are permitted to rely on the good faith and expertise of their trustees; because of this reliance, beneficiaries are under a lesser duty to discover malfeasance relating to their trust assets." *Shoshone Indian Tribe v. US*, 364 F.3d 1339 (Fed. Cir. 2004); *Golden Pac. Bancorp*, 273 F.3d at 518-519.

39

TDAC has never disclosed to me that it was impossible or illegal for

TDAC to purchase shares of Bancorp while a DTC global lock is in effect,

instead for sixteen (16) years TDAC told me half-truths, leaving me to ferret

out the whole truth on my own.[41] (Appx. I at 0039-0047) [ECF 9, ¶¶ 46-66].

TDAC's lawyers in Mr. Kelley's case however, revealed to the *Kelley* court

that it is impossible for TDAC to purchase shares of Bancorp while a DTC

global lock is in effect.[42] I filed my current suit for an accounting soon after

the *Kelley* decision was reconfirmed on March 10, 2021 because that

decision called into question whether my TDAC account statements are true

and accurate. If TDAC's lawyers were being truthful in Mr. Kelley's case,

then the credits for 2,420,000 shares of Bancorp TDAC is crediting to my

current account statements represent impossible transactions, not shares of

Bancorp TDAC holds for me "in street name".

---

[41]     Restatement (Second) of Agency § 381(1958) (it is the duty of the
agent to inform the principal of matters "relevant to affairs entrusted to him
and which, as the agent has notice, the principal would desire to have."];
Restatement (Second) of Trusts § 173 (1957) (The common law impresses
on a trustee the duty to give a beneficiary "upon his request at reasonable
times complete and accurate information as to the nature and amount of the
trust property...." *Id*. at cmt. c ("[T]he beneficiary is always entitled to such
information as is reasonably necessary to enable him to enforce his rights
under the trust or to prevent or redress a breach of trust.").

[42]     *See TD Ameritrade, Inc. v. Kelle*y, No. 15 Civ. 714 (PAC)(FM)
(S.D.N.Y. Sept. 30, 2016) *reconsidered and confirmed TD Ameritrade, Inc.
v. Kelley*, No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021).

The allegations in my SAC of TDAC's fiduciary misconduct spanning sixteen (16) years (Appx. I at 0028, 0044-0056) [ECF 9, ¶¶ 2-4, 58-66, 71-107], are in there because TDAC admitted in the *Kelley* case, and the *Kelley* court accepted as fact, that it is impossible and probably illegal for TDAC to purchase shares of Bancorp on any customer's behalf while a DTC global lock is in effect.[43] A DTC global lock has been in effect on Bancorp shares officially since August 11, 2005, and unofficially since 2002. In other words, no shares of Bancorp were available in the DTC pool of fungible Bancorp shares for TDAC customers to purchase when I placed my ORDERS for Bancorp shares in 2005. (Appx. I at 0044) [ECF 9, ¶¶ 59]; (Appx. II at 0329-0330) [ECF 20, pp. 13-14]; (Appx. II at 0451-0453) [ECF 23, pp. 17-20]. I am entitled to the remedy of an accounting to find out what TDAC did with my $17,236.53 that I authorized TDAC to use for the sole purpose of purchasing 2,420,000 shares of Bancorp.

### f. My Motion For A Preliminary Injunction.

I am not appealing the district court's decision to deny my motion for a preliminary injunction. I note only that the district court could have

---

[43]     *See TD Ameritrade, Inc. v. Kelle*y, No. 15 Civ. 714 (PAC)(FM) (S.D.N.Y. Sept. 30, 2016) *reconsidered and confirmed TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(BCM) (S.D.N.Y. Mar. 10, 2021).

construed my motion for a preliminary injunction to be a petition for the accounting I am entitled to.[44] (Appx. II at 0435) [ECF 23 (Motion, Memo)]; (Appx. II at 0489) [ECF 25 (Reply)]. TDAC made no claim of ownership to my $17,263.53, and TDAC did not deny it had a duty to account.[45]

### g. Motion For Judicial Notice

The district court declared moot my August 1, 2022 Motion for Judicial Notice and my July 29, 2022 request for permission to supplement the record with FINRA Regulatory notice 21-16. (SAppx. at 023) [ECF 36, p. 18 n.10 (Order)]; (Appx. II at 0533-0541) [ECF 34 (Mot. for Judicial Notice.)], (Appx. II at 0528) [ECF 32, p. 2 (request for permission)].

---

[44]     *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed. . . ."); FRCP 1 ("The [Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); FRCP 8(e) ("Pleadings must be construed so as to do justice."); *Fletcher v. US*, 730 F.3d 1206, 1214 (10th Cir. 2013) (Gorsuch, J) ("[I]n a traditional equitable accounting, the trial court possesses considerable discretion to mould the nature and scope of the accounting to the necessities of the particular case.") (citations and quotations omitted).

[45]     *See Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) ("The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property, and, if a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property.") (citations omitted).

I am requesting this court take judicial notice of any documents in my August 1, 2022 motion [ECF 34] that are relevant to this courts analysis of my appeal, and take judicial notice of the April 21, 2021 FINRA Regulatory Notice 21-16 and FINRA Rule 2268 I cited and quoted above in my argument on forum-selection clauses. (SAppx. at 026, 035).[46]

### h. Leave To Amend.

This court reviews "de novo a denial of leave to amend on futility grounds." *Hutchison v. Deutsche Bank Sec. Inc*., 647 F.3d 479, 490 (2d Cir. 2011). I requested leave to amend my SAC to remedy any pleading defects. (Appx. II at 0327) [ECF 20, p. 11]. The district court denied my request on futility grounds. (SAppx. at 023) [ECF 36, p. 18].

It is <u>not true</u> that numerous arbitration panels and courts have ruled I "do[] not have a valid claim".[47] The only rulings by any court or arbitrator

---

[46]    *See* Fed. R. Evid. 201(d); *Hotel & Rest. Employees Union v. NY Dept. Of Parks*, 311 F.3d 534, 541, n.1 (2d Cir. 2002) ("Although the parties make this request for the first time on appeal, judicial notice may be taken at any stage of the proceeding."); *Banco Safra SA-Cayman Islands Branch v. Samarco Mineracao SA*, No. 19-3976-cv (2d Cir. Mar. 4, 2021) ("We take judicial notice of FINRA's rules governing TRACE.").

[47]    (SAppx. at 023) [ECF 36, p. 18] ("Numerous arbitration panels, another judge of this Court, and the United States Court of Appeals for the Second Circuit have ruled that Plaintiff does not have a valid claim. Plaintiff cannot cure that reality by shifting the theory under which she opts to litigate.").

on the merits of any of my state-law claims against TDAC were issued on

September 20, 2011 and April 1, 2014. (*See* **TABLE 1**, supra p. 23). Not

since the arbitrator's decision on April 1, 2014 has there been any "with

prejudice" ruling by any arbitrator or court on the merits of any of my state-

law agency, trust, UCC Article 8, or property claims against TDAC.

To have res judicata effect, the ruling from the rendering forum must

be a "with prejudice" ruling.[48] A "without prejudice" ruling indicates no

adjudication upon the merits has occurred and "a subsequent suit will not be

barred by the doctrine of res judicata".[49]

> Black's Law Dictionary (7th ed. 1999) defines 'dismissed without prejudice' as 'removed from the court's docket in such a way that the plaintiff may refile the same suit on the same claim,' id., at 482, and defines 'dismissal without prejudice' as '[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period,' ibid.

*Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 505-06 (2001).

---

[48]     The rendering forum is the forum from which the judgment is taken. *See Taylor v. Sturgell*, 553 U.S. 880, 891 & n.4 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law. . . . For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.").

[49]     *See Elfenbein v. Gulf & Western Industries, Inc*., 590 F.2d 445, 449 (2d Cir. 1978) ("Therefore, we choose to import no meaning to the phrase beyond the meaning repeatedly given by this court to the phrase 'without prejudice.' The action is terminated; however, a subsequent suit will not be barred by the doctrine of res judicata.").

In FINRA's private arbitration forum, to obtain a "with prejudice"

ruling, the Code of FINRA Arbitration requires TDAC to submit its

defenses to arbitrators. *See* FINRA Rule 12504 (Motions To Dismiss).[50]

Under the Code of FINRA arbitration, TDAC cannot get a "with prejudice"

ruling from the Director of FINRA Arbitration. On three separate occasions,

TDAC's lawyers made a strategic litigation decision to obtain a "without

prejudice" ruling from the Director of FINRA arbitration rather than a "with

prejudice" ruling from an arbitrator. (*See* **TABLE 2**, supra pp. 25-26).

On March 1, 2021 a Second Circuit panel affirmed the district court's

ruling in my 2017 court case that (1) SEC Rule 15c3-3 does not create a

federal cause of action, and (2) that my state-law causes of action against

TDAC must be submitted to arbitration. Neither Judge Swain nor the

Second Circuit panel made any ruling on the merits (or validity) of my

state-law claims against TDAC— they dismissed my state-law claims

against TDAC without prejudice in favor of arbitration.[51]

---

[50]   *See* January 2017 FINRA Regulatory Notice 17-02 (Motions to
Dismiss in Arbitration) available at:
https://www.finra.org/sites/default/files/notice_doc_file_ref/Regulatory-
Notice-17-02.pdf

[51]   *See Harris v. TD Ameritrade Inc*., 338 F. Supp. 3d 170 (S.D.N.Y.
2018) (Swain); *Harris v. TD Ameritrade Inc*., No. 17 CV 6033-LTS-BCM
(S.D.N.Y. June 10, 2020); *affirmed Harris v. TD Ameritrade Inc*., No. 20-
1960 (2d Cir. Mar. 1, 2021).

The district court distorted the facts to reach its futility determination. Not only did the district court give res judicata effect to "without prejudice" rulings, the district court overlooked that my current account statements are TDAC's statement of my current, and valid property claims to the funds and securities (my property) that TDAC, my common law, SEC registered, FINRA member, agent-trustee is currently holding in trust for me. (Appx. I at 0027, 0038, 0039)-[ECF 9, ¶ 1, 39, 45]; SEC Rule 15c3-3, 17 C.F.R. § 240.15c3-3.[52] It is my property claims reflected on my current account statements, that give rise to my state-law agency, trust, and fiduciary claims against TDAC—including my right to enforce TDAC's fiduciary duty to

---

[52] *See* Appx. I at 0080-0084 [ECF 9, Exhibit 3 (*In the Matter of Merrill Lynch, Pierce*, Exchange Act Rel. No. 78141, Admin. Proc. File No. 3-17312 at 2 (June 23, 2016))] ("Broker-dealers are required to be diligent stewards of the cash and securities entrusted to them by their customers. This basic principle is embodied in Exchange Act Rule 15c3-3, known as the Customer Protection Rule ('Rule'). The Rule requires broker-dealers to safeguard both the cash and securities of their customers so that customer assets can be quickly returned if the firm fails."). *Id*. at 4 ("Rule 15c3-3 requires a broker-dealer that maintains custody of customer securities and cash (a "carrying broker-dealer") to take two primary steps to safeguard these assets. The steps are designed to protect customers by segregating their cash and securities from the brokerdealer's business activities. If the broker-dealer fails financially, the securities and cash should be readily available to be returned to the customers. In addition, if the failed broker-dealer is liquidated in a formal proceeding under the Securities Investor Protection Act, the securities and cash should be isolated and readily identifiable as customer property and, consequently, available to be distributed to customers ahead of other creditors.").

account. (Appx. I at 0030-0032, 0038-0039), (0059-0089) [ECF 9, ¶¶ 10, 12-14, 37-45 & Exhibits 1, 2, 3, 4]. TDAC, a counseled defendant, misled the district court, but that is no excuse for the district court to distort the facts and close its eyes to the facts actually alleged in my SAC that entitle me to the remedy of a full accounting by TDAC, or ignore that I supported my claims and my right to the remedy of a full accounting with citations to case law, restatements, legal treatises, and judicially noticeable documents in my SAC (Appx. I at 0027-0057) [ECF 9]; in my Opposition to TDAC's Motion to Dismiss (Appx. II at 0324-0330, 0333-0338, 0345-0348) [ECF 20, pp. 8-14, 17-22, 29-32]; Appx. II at 0433-0434 [ECF 22]; and in my Motion for Preliminary Relief and Reply (Appx. II at 0445, 0463-0465) [ECF 23, pp. 11, 29-31]; (Appx. II at 0489-0490) [ECF 25, pp 1-2 ].[53]

---

[53]   See *Walker v. Schult*, 717 F.3d 119, 122 n. 1 (2d Cir.2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion"); *Nielsen v. Rabin*, 746 F.3d 58, 62-64 (2d Cir. 2014); *Humphrey v. Rav Investigative & Sec. Services Ltd*., 169 F. Supp. 3d 489, 495 (S.D.N.Y. 2016) ("Further, to the extent claims alleged for the first time in motion papers could have been asserted based on the facts alleged in the complaint, they should also be considered."); *Winters v. City of New York*, No. 1: 19-cv-07271 (MKV) (S.D.N.Y. July 20, 2020) (Vyskocil, J) (Because of Plaintiffs pro se status, "the Court will consider Plaintiff's further explanation of his claims (and the claims he wanted to assert in his Article 78 proceeding) in his Opposition to the Motion."); *Wheeler v. Harper*, No. 1: 19-cv-09689 (MKV) (S.D.N.Y. Mar. 14, 2022) (Vyskocil, J) ("the Court must interpret pro se Plaintiff's SAC to raise the strongest claims that it suggests").

**CONCLUSION**

I am requesting this court reverse the district court's dismissal of my

SAC, remand my case to the district court and direct the district court to

enter an order for TDAC to provide a full accounting of the funds and

securities TDAC is currently holding on my behalf.

Respectfully submitted,

/s/ Jan Harris

Jan Harris
Pro se Plaintiff/Appellant
101 Aupuni Street, Apt. 420
Hilo, HI 96720
541.207.4026
jhk29@hotmail.com

**CERTIFICATE REGARDING COMPLIANCE WITH
TYPE-VOLUME LIMITATION**

This Opening Brief complies with the type-volume limitation of
Local Rule 32(a)(4)(A). The Brief contains 12,702 words according to
Microsoft Word's Word Count tool.

This Brief complies with the typeface requirements of Federal Rule
of Appellate Procedure 32(a). The Brief has been prepared using Microsoft
Word 2016 in a 14-point Times New Roman font.

Dated: September 28, 2022

/s/ Jan Harris

Jan Harris

48

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 4, 2022, I served by email the following counsel of record in Case No. 22-1968, *Harris v TD Ameritrade Clearing Inc.* the Opening Brief, and Special Appendix of Appellant Jan Harris, and Volumes I & II of the Joint Appendix.

Eric Rieder
Laith J. Hamdan
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, NY 10104-3300
Tel: (212) 541-2000
erieder@bclplaw.com
Laith.Hamdan@bclplaw.com
Attorneys for Defendant/Appellee
TD Ameritrade Clearing, Inc.

/s/Jan Harris

Jan Harris