# 22-1968-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————

JAN HARRIS,

*Plaintiff-Appellant,*

– v. –

TD AMERITRADE CLEARING INC.,

*Defendant-Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

LAITH J. HAMDAN
ERIC RIEDER
BRYAN CAVE LEIGHTON PAISNER LLP
*Attorneys for Defendant-Appellee*
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 28(a)(1), Appellee TD Ameritrade Clearing, Inc. ("<u>TDAC</u>") states that it is a wholly owned subsidiary of The Charles Schwab Corporation. The common stock of The Charles Schwab Corporation is publicly traded and listed on The New York Stock Exchange as SCHW. No publicly held corporation owns 10% or more of The Charles Schwab Corporation's common stock.

## **TABLE OF CONTENTS**

ISSUES PRESENTED FOR REVIEW ....................................................................1

STATEMENT OF THE CASE....................................................................................2

    I.      Bancorp Transactions ...............................................................................2

    II.     Prior Litigation History .........................................................................5

    III.    Procedural History in This Action ........................................................9

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT ........................................................................................................11

    I.      The District Court Properly Held That Harris's Claims Are
          Subject to Arbitration Agreements That Preclude Litigation in
          Court. .....................................................................................................11

          A.      Standard of Review.................................................................11

          B.      The Agreements Bar Harris from Commencing an Action
                in Court Concerning Her Alleged Claims Against TDAC. ......11

    II.     The District Court Properly Held That Harris's Claims Are
          Barred by the Doctrine of *Res Judicata*. .............................................13

          A.      Standard of Review.................................................................13

          B.      The Doctrine of *Res Judicata* Bars Harris from Re-
                Litigating Her Alleged Claims Against TDAC. ......................14

    III.    The District Court Properly Held That Harris's Claims Are
          Barred by the Statute of Limitations. ...................................................16

          A.      Standard of Review.................................................................16

          B.      The Statute of Limitations Bars Harris from Asserting Her
                Alleged Claims Against TDAC. ..............................................16

    IV.   The District Court Properly Denied Harris's Request for Leave to
          Amend Her Second Amended Complaint...........................................18

A.    Standard of Review ..................................................................... 18

B.    Denial of Plaintiff's Request to Amend the SAC Was an
Appropriate Exercise of the District Court's Discretion. ......... 18

CONCLUSION ........................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brown Media Corp. v. K&L Gates, LLP*,
854 F.3d 150 (2d Cir. 2017) ................................................................16

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ..................................................................8

*Harris v. TD Ameritrade Inc.*,
2020 WL 3073235 (S.D.N.Y. Jun. 10, 2020), *aff'd*,
837 Fed. Appx. 841 (2d Cir. 2021)..................................................8, 13

*Harris v. TD Ameritrade, Inc.*,
338 F. Supp. 3d 170 (S.D.N.Y. Aug. 14, 2018) ....................................7

*Harris v. TD Ameritrade, Inc.*,
805 F.3d 664 (6th Cir. 2015) .............................................................1, 5

*Harris v. TD Ameritrade, Inc.*,
837 F. Appx. 841 (2d Cir. 2021) ...........................................................8

*Harris v. TD Ameritrade, Inc., et al.*,
No. 1:17-cv-06033-LTS-BCM ...............................................................6

*Jacobson v. Fireman's Fund Ins. Co.*,
111 F.3d 261 (2d Cir.1997) .................................................................15

*Lawrence v. Sol G. Atlas Realty Co.*,
841 F.3d 81 (2d Cir. 2016) ..................................................................11

*Lobaito v. Chase Bank*,
2012 WL 3104926 (S.D.N.Y. July 31, 2012)
*aff'd*, 529 F. Appx. 100 (2d Cir. 2013).................................................15

*Malcolm v. Board of Educ. of Honeoye Falls-Lima Cent.*,
506 F. Appx. 65 (2d Cir. 2012) ...........................................................16

*Manker v. Manker*,
263 Neb. 944 (2002) ............................................................................17

iii

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) ................................................................18

*Monahan v. New York City Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000) ..............................................................14

*Ray v. Ray*,
    22 F.4th 69 (2d Cir. 2021) .................................................................16

*Simmons v. Trans Express Inc.*,
    16 F.4th 357 (2d Cir. 2021) ...............................................................13

*State of New York v. Oneida Indian Nation of N.Y.*,
    90 F.3d 58 (2d Cir. 1996) ..................................................................11

*TD Ameritrade, Inc. v. Kelley*,
    2016 WL 5660399 (S.D.N.Y. Sept. 30. 2016) ....................................5

*TD Ameritrade, Inc. v. Kelley*,
    2021 WL 918621 (S.D.N.Y. Mar. 10, 2021) .......................................8

*Torheim v. Tornheim*,
    67 A.D.3d 775 (2d Dept. 2009) .........................................................17

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ...........................................................................11

**Other Authorities**

CPLR 213(1) ............................................................................................17

Federal Arbitration Act Section 12 (9 U.S.C. § 12) ..................................8

Fed. R. App. P. 32(a)(5) ...........................................................................21

Fed. R. App. P. 32(a)(6) ...........................................................................21

Fed. R. App. P. 32(f) ................................................................................21

FINRA Rule 12203(a)........................................................................6, 7, 9

*In re Bancorp Int'l Group, Inc.*,
    S.E.C. Release, 2005 WL 3710976 (Aug. 31, 2005)......................... 2-3

*In re Energy Source, Inc.*, Release No. 60920,
   2009 WL 3633868 (Nov. 3, 2009)

Rule 32.1(a)(4) ................................................................................4

SEC, DTC Chills and Freezes (May 1, 2012), available at:
   https://www.sec.gov/oiea/investor-alerts-bulletins/ib_dtcfreezes
   (last visited Dec. 12, 2022) ...............................................................3

*Self-Regulatory Organizations; the Depository Tr. Company; Order*
   *Granting Approval of A Proposed Rule Change, As Modified by*
   *Amendment No. 1, to Impose Deposit Chills and Glob. Locks and*
   *Provide Fair Procedures to Issuers*,
   Release No 79488, 2016 WL 7115454 (Dec. 6, 2016).........................3

## ISSUES PRESENTED FOR REVIEW

1. Whether the District Court properly held that the claims asserted by Plaintiff-Appellant Jan Harris ("Harris") against TDAC in the Second Amended Complaint (the "SAC") are subject to arbitration agreements that preclude Harris from commencing this action.

2. Whether the District Court properly held that Harris's claims against TDAC in the SAC are barred by the doctrine of *res judicata*.

3. Whether the District Court properly held that Harris's claims against TDAC in the SAC are barred by the statute of limitations.

4. Whether the District Court properly denied Harris's request for leave to amend the SAC.

## STATEMENT OF THE CASE

Harris is a serial litigant who, for over a decade, has attempted to press these same baseless claims against TDAC and its affiliates in multiple fora, concerning transactions which occurred in 2005. Her claims were denied on the merits in arbitration before the Financial Industry Regulatory Authority ("FINRA") in 2011 and 2014, and dismissed by the District Court in 2020 as subject to mandatory arbitration, in a decision affirmed by this Court in 2021. The latest action dismissed by the District Court is nothing more than Harris's latest attempt to avoid the outcome of her prior arbitrations and court decisions. The District Court properly dismissed Harris's claims as (i) subject to mandatory arbitration; (ii) previously adjudicated in arbitration; and (iii) otherwise barred by the statute of limitations. For all of the reasons set forth below, TDAC respectfully submits that the District Court's dismissal of this case should be affirmed.

## I.  **Bancorp Transactions**

Between September and May 2005, Harris alleges that she paid a total of $17,236.53 (the "Purchase Price") to purchase 2,420,000 shares of Bancorp International Group, Inc. ("Bancorp") common stock in brokerage accounts with Scottrade, Inc. and Ameritrade, Inc. (SAC ¶ 46, at A39.)[1] Harris's Bancorp shares are held electronically in "street name" for Harris through the indirect holding

---

[1]    TDAC is the successor in interest to both Ameritrade, Inc. and Scottrade, Inc.

system administered by Depository Trust Company ("DTC"), as is the case with the vast majority of securities traded in the public markets.  (SAC ¶ 47, at A40.).[2]

After Harris's shares were purchased, Bancorp announced in August 2005 that it had "been the victim of corporate identity fraud" and that those involved with the fraud had printed "hundreds of millions" of "invalid share certificates with the legend [Bancorp]."  (SAC Ex. 6, at A96). As a result, DTC announced that it would "suspend all services, except Custody services" for Bancorp securities. (*Id.*, at A95.). The practical effect of the DTC suspension (referred to as a "global lock") was that TDAC was prevented from withdrawing or transferring Bancorp shares held in "street name" to direct holding in the name of the beneficial owner.  *See* SEC, DTC Chills and Freezes (May 1, 2012), available at: https://www.sec.gov/oiea/investor-alerts-bulletins/ib_dtcfreezes (last visited Dec. 12, 2022).   A few weeks after Bancorp's and DTC's announcements, the SEC in late August 2005 suspended trading in Bancorp securities.  *See In re Bancorp Int'l Group, Inc.*, S.E.C. Release,

---

[2]    "DTC processes enormous volumes of securities transactions facilitated by book-entry movement of interests, without transferring physical certificates" by maintaining publicly traded securities "in 'fungible bulk,' meaning that each Participant whose securities of an issue have been credited to its securities account has a pro rata (proportionate) interest in DTC's entire inventory of that issue, but none of the securities on deposit are identifiable to or 'owned' by any particular Participant."  *See* Self-Regulatory Organizations; the Depository Tr. Company; Order Granting Approval of A Proposed Rule Change, As Modified by Amendment No. 1, to Impose Deposit Chills and Glob. Locks and Provide Fair Procedures to Issuers, Release No 79488, 2016 WL 7115454, at *1-2 (Dec. 6, 2016).

2005 WL 3710976 (Aug. 31, 2005). On November 3, 2009, the SEC revoked the registration of Bancorp shares because of the company's repeated failure to file periodic reports. *See In re Energy Source, Inc.*, Release No. 60920, 2009 WL 3633868, at *1 (Nov. 3, 2009).

When Harris opened her brokerage accounts, she agreed to be bound by the applicable brokerage and customer agreements with Ameritrade, Inc. (the "2005 TDA Agreement," A172-182) and Scottrade, Inc. (the "2005 Scottrade Agreement," A184-190). In connection with this litigation, Harris indicates her agreement to be bound by a similar customer agreement that she describes as "the current TD Ameritrade Client Agreement" (the "2021 TDA Agreement," SAC Ex. 10, A120-130). (*See* Appellant Br. p. 12.) The 2005 TDA Agreement, 2005 Scottrade Agreement, and 2021 TDA Agreement are collectively referred to herein as the "Agreements"). Each of the Agreements generally required that all disputes with TDAC be submitted to arbitration. (*See* 2005 TDA Agreement ¶ 92, at A179; 2005 Scottrade Agreement ¶ 21, at A189-90; 2021 TDA Agreement ¶ 12, at A129.)

Harris's dispute with TDAC allegedly began "[i]n early 2010, [when Harris] requested TDAC remove [her] shares of Bancorp from street (nominee) name and register the shares in [her] own name on Bancorp's books." (SAC ¶ 50, at A40.) TDAC advised her that, as a result of the global lock, they could not transfer the shares. (SAC ¶¶ 52, 54, at A41.) The effect of the global lock on the ability of

4

brokerage firms to transfer shares to customers' names directly has been well-documented in litigation involving other Bancorp shareholders who, like Harris, have demanded physical share certificates. *See, e.g.*, *Harris v. TD Ameritrade, Inc.*, 805 F.3d 664 (6th Cir. 2015) (TDAC barred from delivering physical Bancorp share certificate because of DTC "global lock"); *TD Ameritrade, Inc. v. Kelley*, 2016 WL 5660399 (S.D.N.Y. Sept. 30. 2016) (same).

## II.  <u>Prior Litigation History</u>

In early 2011, Harris initiated FINRA's arbitrations proceedings against each of Scottrade, Inc. and TD Ameritrade, Inc.[3] to enforce her purported "'absolute right' as an equitable owner" to have Bancorp shares registered in her name. (SAC ¶¶ 51-52, at A40-41.) In September 2011, the arbitrator in FINRA Case No. 11-00018 issued an award denying on the merits Harris's claims against Scottrade in their entirety (the "<u>2011 Award</u>," A230-32). (SAC ¶ 52, at A41.) After her claims against Scottrade were denied, Harris voluntarily withdrew her then-pending FINRA arbitration against TD Ameritrade in FINRA Case No. 11-01467. (*Id.*) In 2013, after a different claimant had allegedly succeeded in a different arbitration concerning similar claims, Harris filed another FINRA arbitration (FINRA Case No. 13-02446) against TDAC. (SAC ¶ 53, at A41.) In 2014, the arbitrator issued an award on the merits, denying Harris's claims against TDAC in their entirety, "in full

---

[3]        Ameritrade, Inc. was renamed to TD Ameritrade, Inc. prior to that proceeding.

and final resolution of the issues submitted for determination" (the "2014 Award," A233-34). (SAC ¶ 53, at A41.)

Shortly after the 2014 Award was issued, Harris initiated another arbitration case against TDAC (FINRA Case No. 14-03328) and another against Scottrade (FINRA Case No. 14-03360). (SAC ¶ 55, at A42.) TDAC and Scottrade requested summary dismissal of those proceedings pursuant to Rule 12203(a) of the FINRA Code of Arbitration Procedure for Customer Disputes ("FINRA Rules") on the grounds that Harris's claims had already been denied in prior arbitrations. (*Id.*; *see also* FINRA Filings, at A236 and A239.) In response to those requests, FINRA advised Harris by letters dated December 23, 2014 and February 9, 2015 that her claims were declined pursuant to FINRA Rule 12203(a) because they "are not eligible for arbitration." (*See* FINRA Letters, at A257 and A259; SAC ¶ 55 n.21, at A42.)

More than two years later, on August 9, 2017, Harris commenced a lawsuit in the District Court, styled *Harris v. TD Ameritrade, Inc., et al.*, No. 1:17-cv-06033-LTS-BCM (the "Prior SDNY Case"), in which Harris (in her own words) "refiled" the same claims that had previously been denied in her FINRA arbitrations. (SAC ¶ 56, at A42; *see also* Complaint in Prior SDNY Case, A260-275.) TDAC moved, among other grounds, to compel arbitration. (SAC ¶ 56, at A42.) On August 15, 2018, Magistrate Judge Moses issued a report and recommendation stating that

FINRA arbitration was the exclusive forum for Harris's disputes with TDAC arising from transactions for Bancorp shares through her brokerage accounts. *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 183-185 (S.D.N.Y. Aug. 14, 2018). Over Harris's objections, Judge Swain adopted Magistrate Judge Moses's recommendation, compelled arbitration, and stayed the Prior SDNY Case. *See id.*

In response to Judge Swain's decision, Harris filed motions asking Judge Swain to reconsider, to certify an interlocutory appeal, and to permit Harris to file an amended complaint. On July 9, 2019, Judge Swain denied Harris's request for reconsideration, and for certification of an interlocutory appeal. (Order in Prior SDNY Case, A281-286.) On July 15, 2019, the Court denied Harris's motion to amend, holding that because Harris "is required by her arbitration agreements with [TDAC and Scottrade] to arbitrate 'any controversy' with [them]," any proposed supplemental claims would also have to be arbitrated. (Order in Prior SDNY Case, A288.)

In December 2019, Harris then initiated another FINRA arbitration against TDAC. (SAC ¶ 56, at A42.) FINRA again declined to accept Harris's claims for arbitration, pursuant to FINRA Rule 12203(a), explaining that:

> [T]he claims you have alleged in your statement of claim are not eligible for arbitration because they have been previously considered in the FINRA arbitration forum and denied in FINRA arbitration cases 11-00018 [2011 Award] and 13-02446 [2014 Award].

7

(SAC ¶ 56, at 43; FINRA Letter, A289.)

On February 21, 2020, Harris informed the Court that FINRA had declined to re-arbitrate her claims. (A290-91.) Harris then filed three more motions in succession, seeking: *(1)* relief from the stay and permission to amend her complaint; *(2)* immediate possession of physical Bancorp shares; and *(3)* a declaratory judgment that her FINRA arbitrations did not preclude her from pursuing her claims in Court. *See Harris v. TD Ameritrade Inc.*, 2020 WL 3073235 (S.D.N.Y. Jun. 10, 2020), *aff'd*, 837 Fed. App'x 841 (2d Cir. 2021).[4] Judge Swain denied all three motions, and dismissed Harris's claims without prejudice to her rights, if any, to pursue them in arbitration. *Id*. at *4. The Second Circuit affirmed, "agree[ing] with the district court that Harris was required to arbitrate her claims against" TDAC. *Harris v. TD Ameritrade, Inc.*, 837 F. Appx. 841, 842 (2d Cir. 2021) (request for rehearing denied).[5]

---

[4] Notably, Harris's motions did not ask the District Court to vacate the 2011 or 2014 Awards. As Harris is likely aware, any request to vacate those Awards would have been denied as untimely under Section 12 of the Federal Arbitration Act (9 U.S.C. § 12). *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period [set forth in the statute] has run").

[5] While Harris's appeal was pending, she simultaneously tried to press the same claims against TDAC by moving to intervene in a separate case by another individual regarding Bancorp shares. *See TD Ameritrade, Inc. v. Kelley*, 2021 WL 918621 (S.D.N.Y. Mar. 10, 2021). The Court had entered judgment in TDAC's favor and closed the case over four years before Harris's motion to intervene. *See id.* Harris's motion was denied shortly after the appeal was decided.

A few months later, on August 1, 2021, Plaintiff initiated a seventh FINRA arbitration against TDAC. (SAC ¶ 68, at A47.)  FINRA again advised Harris that her claims were ineligible for arbitration under FINRA Rule 12203(a).  (SAC ¶ 69, at A48; SAC Ex. 9, FINRA Letter, A111.)  In response, on October 28, 2021, Harris filed her initial complaint in this action, seeking the same relief she previously sought in her August 2021 FINRA arbitration, as she acknowledges.  (SAC ¶ 68, at A47.)

## III.   <u>Procedural History in This Action</u>

Harris commenced this action on October 28, 2021.  (*See* A1, D.E. # 1.) Harris amended her initial complaint on November 11, 2021 (*see* A2, D.E. # 4), and then again on December 9, 2021 (*see id.*, D.E. # 9.)  TDAC moved to dismiss the SAC on February 8, 2022.  (*See* A3, D.E. # 16.)  After TDAC's motion was fully briefed, Harris filed a motion for a preliminary injunction, followed by a series of additional filings requesting the denial of TDAC's motion.  (*See* A4, D.E. # 23, 25, 26, 28, 30, 32, 33, 34.)  On August 18, 2022, Judge Vyskocil issued an Opinion and Order granting TDAC's motion, and denying Harris's request for a preliminary injunction (the "<u>2022 Decision</u>," at A6-24).  On the same date, final judgment was entered in favor of TDAC, dismissing the SAC for the reasons stated in the 2022 Decision.  (A25.)  Harris appeals from the dismissal of her claims, but she does not appeal the denial of her preliminary injunction request.  (*See* Appellant Br. at 41.)

9

## SUMMARY OF THE ARGUMENT

As the District Court correctly found, Harris's claims against TDAC, as set forth in the SAC, are subject to dismissal on at least three independent grounds. First, Harris's claims against TDAC are subject to binding arbitration agreements that preclude her from pursuing those claims in court. As the District Court and Second Circuit each held in Harris's Prior SDNY Case against TDAC, FINRA's refusal to entertain Harris's requests to re-arbitrate claims that FINRA arbitrators had previously adjudicated does not undermine that conclusion. Second, Harris's claims against TDAC are barred by the doctrine of *res judicata* because those claims were previously denied on the merits pursuant to the 2011 and 2014 Awards. Third, any applicable statute of limitations expired because Harris's purported breach of fiduciary duty/trust claims would have accrued no later than 2010, by which time Harris alleges she was told that TDAC was not holding the Purchase Price on her behalf, and that TDAC could not provide her with physical certificates of her Bancorp shares. Accordingly, TDAC respectfully submits that the 2022 Decision and the dismissal of this case should be affirmed.

**ARGUMENT**

**I.    The District Court Properly Held That Harris's Claims Are Subject
to Arbitration Agreements That Preclude Litigation in Court.**

**A.    Standard of Review**

This Court reviews *de novo* a district court's grant of a motion to compel
arbitration and its grant of a motion to dismiss a complaint.  *Lawrence v. Sol G. Atlas
Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016).   "[I]n applying general state-law
principles of contract interpretation to the interpretation of an arbitration agreement
within the scope of the [Federal Arbitration] Act ... due regard must be given to the
federal policy favoring arbitration...."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland
Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (internal citations omitted).  "In
accordance with that policy, [this Court] resolve[s] doubts as to the arbitrability of a
claim in favor of arbitrability."  *State of New York v. Oneida Indian Nation of N.Y.*,
90 F.3d 58, 61 (2d Cir. 1996) (citations omitted).

**B.    The Agreements Bar Harris from Commencing an Action
in Court Concerning Her Alleged Claims Against TDAC.**

The Agreements each provide that FINRA arbitration is the exclusive method
through which Harris may pursue claims against TDAC concerning her orders for
Bancorp shares.   The 2005 TDA Agreement states that "[a]ll controversies
concerning (a) any transaction … or (c) any other matter which may arise between
Ameritrade …and me shall be determined by arbitration in accordance with the rules
of the National Association of Securities Dealers, Inc. [FINRA's predecessor.]"

(¶ 92, at A179.)  The 2005 Scottrade Agreement states that "[y]ou [Harris] agree to settle by arbitration any dispute between you and Scottrade … relating to your Brokerage Account(s)…."  (¶ 21, at A189.)  And the 2021 TDA Agreement states that "I [Harris] agree that any controversy between [the parties] arising out of or relating to this Agreement, our relationship, any Services provided by [TDAC], or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated…."  (¶ 12, at A129.)

Harris alleges that, before commencing this action, she "submitted a Statement of Claim to FINRA's Arbitration Forum seeking *the same relief* [she is] seeking in this complaint" (emphasis added) and that her claims were rejected on the same grounds as her earlier attempts to re-arbitrate this dispute.  (SAC ¶¶ 68-69, at A47-48.)   Although Harris has conceded that she is "<u>not</u> challenging the enforceability" of her agreement to arbitrate, and that she is "<u>not</u> challenging the arbitrability of [her] claims" (Opp. Br., at A330-31 (emphasis in original)), Harris continues to insist – as she did in the Prior SDNY Case – that she is entitled to pursue her claims in court because, in rejecting her claims for re-arbitration, FINRA stated that her claims "are not eligible for arbitration."  (SAC ¶ 69, at A48; Appellant Br., at 7.)  But as Judge Vyskocil recognized, Harris ignores that her claims were deemed ineligible not because they were not arbitrable claims, but rather because they (i) were arbitrable, and (ii) had been arbitrated by FINRA as reflected in the FINRA

2011 and 2014 Awards disposing of Harris's claims "in their entirety." (*See* 2011 Award, A230-32; 2014 Award, A233-34.) As Judge Swain and the Second Circuit agreed in the Prior SDNY Case, Harris's "exhaustion of her opportunities in FINRA's arbitration forum, which has rejected her claims as already considered, does not entitle her to litigate her claims in this Court." *Harris*, 2020 WL 3073235, at *3, *aff'd*, 837 F. Appx. 841, 842 (2d Cir. 2021) (rejecting Harris's argument "that because FINRA refused to accept her re-submitted claims, those claims are now not arbitrable").

FINRA's latest rejection of Harris's attempt to re-arbitrate decided claims (*see* FINRA Letter, A111) is no different from its earlier rejections of similar attempts that she made in December 2014 (FINRA Letter, A257), February 2015 (FINRA Letter, A259), and February 2020 (FINRA Letter, A289). As this Court has recognized in affirming the dismissal of the Prior SDNY Case, such denials do not permit Harris to pursue her claims outside of arbitration.

## II.   The District Court Properly Held That Harris's Claims Are Barred by the Doctrine of *Res Judicata*.

### A.   Standard of Review

This Court reviews *de novo* the dismissal of a complaint and the application of *res judicata* or claim preclusion. *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021).

**B.    The Doctrine of *Res Judicata* Bars Harris from
Re-Litigating Her Alleged Claims Against TDAC.**

Even if Harris's were permitted to pursue her claims in court, Judge Vyskocil

correctly determined that Plaintiff's claims would be subject to dismissal under the

doctrine of *res judicata*.  A claim is subject to dismissal under *res judicata* if "(1)

the previous action involved an adjudication on the merits; (2) the previous action

involved the plaintiffs or those in privity with them; (3) the claims asserted in the

subsequent action were, or could have been, raised in the prior action." *Monahan v.

New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (internal alterations

omitted).

As Judge Vyskocil correctly stated, Harris's claims against TDAC in this case

were previously adjudicated on the merits in FINRA arbitration proceedings with

TDAC.  In FINRA Case No. 11-00018 (the proceeding disposed of by the

2011 Award) Harris alleged – as she does here – that TDAC failed to complete her

orders for Bancorp shares through her Scottrade brokerage account in 2005, and that

she sought "reimburse[ment] … for the cost to obtain" Bancorp shares.  (SAC Ex.

16, Statement of Claim, at A356-59.)  The arbitrator "decided and determined in full

and final resolution of the issues" that Harris's claims should be "denied in their

entirety" and her "request for reimbursement to accounts for the costs to obtain

genuine certificates [was] denied."  (2011 Award, at A231.)  Then, in FINRA Case

No. 13-02446 (the proceeding disposed of by the 2014 Award), Harris filed another

statement of claim concerning her orders for Bancorp shares, and TDAC's purported failure to have those shares registered in her name. (SAC Ex. 17, Statement of Claim, at A365-72.) The arbitrator again "decided and determined in full and final resolution of the issues" that Plaintiff's claims should be "denied in their entirety." (2014 Award, at A233.) FINRA's rejection of Harris's claims in arbitration constitute final adjudications on the merits. *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267 (2d Cir.1997) ("res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award") (citation omitted).

The claims asserted in the SAC are the same as those adjudicated by the 2011 and 2014 Awards because "they each arise from a common nucleus of operative fact." *Lobaito v. Chase Bank*, 2012 WL 3104926, at *2 (S.D.N.Y. July 31, 2012) *aff'd*, 529 F. Appx. 100 (2d Cir. 2013). It is clear from the allegations in the SAC that this action involves the same events and circumstances that Harris has been litigating with TDAC for the past decade. (*See, e.g.*, SAC ¶ 72, at A48 ("TDAC failed to complete my purchases of 2,420,000 Bancorp shares"); SAC ¶ 97, at A54 ("TDAC's misrepresentation to me that in 2005 TDAC used my $17,236.53 to purchase 2,420,000 shares of Bancorp on my behalf constitutes a breach of TDAC's fiduciary duty").

Harris argues that her claims in this action are not precluded by the 2011 and 2014 Awards because she now seeks an "accounting" or restitution of the Purchase Price that she had provided to TDAC (in 2005) for the purchase of Bancorp shares. But Harris's argument confuses her *claim* with her demand for a *remedy*. As Judge Vyskocil correctly held, Harris "cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *See Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted); *Malcolm v. Board of Educ. of Honeoye Falls-Lima Cent.*, 506 F. Appx. 65, 69 (2d Cir. 2012) ("'Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence'") (internal quotation marks and citation omitted).

## III. The District Court Properly Held That Harris's Claims Are Barred by the Statute of Limitations.

### A. Standard of Review

This Court reviews *de novo* the dismissal of a complaint and the application of the statute of limitations. *Ray v. Ray*, 22 F.4th 69, 72 (2d Cir. 2021).

### B. The Statute of Limitations Bars Harris from Asserting Her Alleged Claims Against TDAC.

Judge Vyskocil also correctly held that, if this action were permitted to proceed in court, Harris's claims would be barred by the applicable statute of limitations under New York or Nevada law. According to Plaintiff, she provided the Purchase Price to TDAC in trust for the sole purpose of purchasing Bancorp

16

shares, and TDAC allegedly breached its fiduciary duties by failing to either acquire physical Bancorp share certificates to hold on her behalf or return the Purchase Price to her. (*See, e.g.*, SAC ¶¶ 78-79, at A50.) The statute of limitations period under Nebraska law for a breach of trust concerning personal property is four years from the time the plaintiff "is apprised of the fact that the trustee does not intend to carry out the provisions of the trust." *Manker v. Manker*, 263 Neb. 944, 957 (2002). Under New York law, "[a] cause of action for a constructive trust is governed by the six-year statute of limitations provided by CPLR 213(1), which begins to run upon the occurrence of the allegedly wrongful act giving rise to a duty of restitution. *Torheim v. Tornheim*, 67 A.D.3d 775, 776 (2d Dept. 2009) (citations omitted). When a defendant allegedly "wrongfully withholds property acquired lawfully from the beneficiary," the claim accrues when "the trustee breaches or repudiates the agreement to transfer the property." *Id.*

To the extent that Harris claims TDAC breached a trust or duty with respect to its failure to acquire possession of physical Bancorp share certificates or provide physical certificates to her, the SAC indicates that Harris knew by no later than 2010 that TDAC would not do so. (SAC ¶¶ 50-51, at A40.) To the extent she claims a breach of trust or duty with respect to TDAC's failure to return the Purchase Price, the SAC indicates that Harris knew by no later than September 2005 that TDAC had "removed [the Purchase Price] from [her] accounts" and was no longer holding those

17

amounts for her or on her behalf. (SAC ¶ 46, at A39.) Further, Harris alleges that, by 2011, TDAC had successfully opposed her demand for repayment in her FINRA arbitration, as well as her demand for physical shares. (SAC ¶ 52, at A41; 2011 Award, at 231 ("Claimant's request for reimbursement to accounts for the costs to obtain genuine certificates is denied").) Thus, regardless of how Harris's claims are construed, they accrued by no later than 2011, approximately ten years prior to the commencement of this action in 2021. Under either the New York or Nebraska statute of limitations, the claim is time-barred.

## IV.   The District Court Properly Denied Harris's Request for Leave to Amend Her Second Amended Complaint.

### A.   Standard of Review

This Court generally reviews the denial of leave to amend for abuse of discretion, but will review *de novo* a denial based on futility. *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022).

### B.   Denial of Plaintiff's Request to Amend the SAC Was an Appropriate Exercise of the District Court's Discretion.

Judge Vyksocil appropriately denied Harris's request to amend the SAC (which would have been Harris's third amendment in this case). Harris has continued to litigate the claims set forth in the SAC since 2010, and they have been rejected by every court or tribunal that has addressed them. (*See* SAC ¶¶ 52-58, at A41-44.) Harris identifies no amendment that could be made to the SAC to remedy all three of the defects supporting dismissal of this case, each of which concerns the

18

core subject matter of her claims, rather than any technical pleading issue. (*See generally* Appellant Br., at 43-47.) Accordingly, Judge Vyskocil correctly determined that amendment would be futile.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

For the reasons stated above, the TDAC respectfully requests that this Court affirm the District Court's dismissal of this case.

Dated:  January 3, 2023          **BRYAN CAVE LEIGHTON PAISNER LLP**

By:  */s/ Eric Rieder*
Eric Rieder
Laith J. Hamdan
1290 Avenue of the Americas
New York, NY 10104
T: (212) 541-2000
E: ERieder@bclplaw.com
E: Laith.Hamdan@bclplaw.com

*Counsel for Appellee*
*TD Ameritrade Clearing, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Local Rule 32.1(a)(4) of the Local Rules and Internal Operating Procedures of the Court of Appeals for the Second Circuit because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains less than 4,500 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman.

Dated:   January 3, 2023                             */s/ Eric Rieder*
                                                    Eric Rieder

STATE OF NEW YORK    )                **AFFIDAVIT OF SERVICE**
                           )    ss.:       **BY MAIL**
COUNTY OF NEW YORK  )

      I, Melissa Pickett, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

      **On January 3, 2023**

deponent served the within:  **Brief for Defendant-Appellee**

      **Upon:**

**Jan Harris**
**101 Aupuni Street, Apartment 420**
**Hilo, HI 96720**
**541.207.4026**

the address(es) designated by said attorney(s) for that purpose by depositing  **2**  true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on January 3, 2023**

**/s/ Mariana Braylovskiy**
     *Mariana Braylovskiy*
  Notary Public State of New York
      No. 01BR6004935
   Qualified in Richmond County
Commission Expires March 30, 2026

**/s/ Melissa Pickett**
**Melissa Pickett**

**Job #  317912**