# 22-1968

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

Jan Harris,
*Plaintiff-Appellant*,
v.
TD Ameritrade Clearing Inc.,
*Defendant-Appellee*.

On Appeal From The United States District Court
For The Southern District Of New York

REPLY BRIEF
of
Appellant Jan Harris

Jan Harris
*Pro Se Appellant*
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
(541) 207-4026

## DISCLOSURE STATEMENT

Appellant is not an attorney. No part of this document was drafted by an attorney. No attorney assisted appellant draft this document.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................1

ARGUMENT .....................................................................................................3

    a.  Forum Selection Clauses ........................................................................5

        1.  Rule 12(b)(6) vs Forum Non Conveniens. ...........................................8

        2.  Forum Non Conveniens. ....................................................................10

        3.  The TDAC Client Agreement. ...........................................................11

        4.  Morgan v. Sundance, Inc. ...................................................................13

    b.  Appellee TDAC's Fiduciary Relationship With Customers. ..................16

    c.  Sufficiency Of My SAC. .......................................................................18

    d.  Appellee TDAC's Affirmative Defenses .................................................21

CONCLUSION ..............................................................................................27

CERTIFICATE OF COMPLIANCE..............................................................28

CERTIFICATE OF SERVICE .......................................................................28

# TABLE OF AUTHORITIES

<u>**Federal Cases**</u>

*Abdullahi v. Pfizer, Inc.*,
   562 F.3d 163 (2d Cir. 2009) ..............................................................13, 14

*Atlantic Marine Const. v. US Dist. Court*,
   134 S. Ct. 568 (2013)..............................................................................7, 8

*AT & T Technologies, Inc. v. Communications Workers*,
   475 U.S. 643 (1986) .................................................................................10

*Banca Di Credito v. Small*,
   No. 20-285-cv (2d Cir. Mar. 19, 2021) ....................................................8

*Bank Of Credit And Commerce v. Bank of Pakistan*,
   273 F.3d 241 (2d Cir. 2001) .......................................................10, 13, 15

*Brownback v. King*,
   141 S. Ct. 740 (2021) ...............................................................................10

*Cavanaugh v. Geballe*,
   28 F.4th 428 (2d Cir. 2022) .......................................................................5

*Christianson v. Colt Industries Operating Corp.*,
   486 U.S. 800 (1988) ...............................................................................4, 5

*Cohen v. SAC Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013) .....................................................................23

*Cohen v. UBS Financial Services Inc.*,
   799 F.3d 174 (2d Cir. 2015) .......................................................................4

*Daou v. BLC Bank, SAL*,
   42 F.4th 120 (2d Cir. 2022) .......................................................................8

*DiRienzo v. Philip Services Corp.*,
   232 F.3d 49 (2d Cir. 2000) .........................................................................8

**Federal Cases cont.**

*DiTolla v. Doral Dental IPA of New York*,
    469 F.3d 271 (2d Cir. 2006) ....................................................................18

*Donnay Usa Ltd. v. Donnay Int'l SA*,
    No. 16-3067-cv (2d Cir. Aug. 24, 2017) ...................................................8

*Dr. Robert L. Meinders v. United Healthcare Ser's*,
    7 F.4th 555 (7th Cir. 2021) .......................................................................7

*Fasano v. Li*,
    47 F.4th 91 (2d Cir. 2022) .........................................................................8

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ......................................................................9

*Golden Pac. Bancorp v. F.D.I.C.*,
    273 F.3d 509 (2d Cir. 2001) ....................................................................23

*Henry Schein v. Archer And White Sales*,
    139 S. Ct. 524 (2019)..............................................................................10

*In Re Arbitration Between Monegasque De Reassurances v. Nak
Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002) ......................................................................9

*In re Lehman Bros., Inc.*,
    791 F.3d 277 (2d Cir. 2015) ....................................................................16

*In re Soundview Elite Ltd.*,
    594 B.R. 108 (Bankr. S.D.N.Y. 2018) ....................................................22

*Koreska v. Perry-Sherwood Corp.*,
    253 F. Supp. 830 (S.D.N.Y. 1965) *affd* 360 F.2d 212 (2d Cir. 1966).....15

*Levitt v. JP Morgan Securities, Inc.*,
    710 F.3d 454 (2d Cir. 2013) ....................................................................20

*Loreley Financing No. 3 v. Wells Fargo Securities*,
    797 F.3d 160 (2d Cir. 2015) ....................................................................20

## Federal Cases cont.

*Marbury Management, Inc. v. Kohn*,
629 F.2d 705 (2d Cir. 1980) ....................................................................17

*Maria Victoria Naviera, SA v. Cementos del Valle*,
759 F.2d 1027 (2d Cir. 1985) ....................................................................9

*Martinez v. Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014) ............................................................8, 9, 14

*MBC Fin. Servs Ltd. v. Boston Merch. Fin. Ltd.*,
No. 16-3704-cv (2d Cir. Aug. 23, 2017) ....................................................8

*McMann v. SEC*,
87 F.2d 377 (2d Cir. 1937) ......................................................................18

*Meredith v. Winter Haven*,
320 U.S. 228 (1943) ..................................................................................6

*Metropolitan Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019) ......................................................................4

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022)..................................................................2, 13, 15

*Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co.*,
339 F.2d 440 (2d Cir. 1964) ....................................................................15

*New Moon Shipping Co. v. MAN B & W Diesel AG*,
121 F.3d 24 (2d Cir. 1997) ........................................................................6

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) ..................................................................................4

*Norex Petroleum Ltd. v. Access Industries*,
416 F.3d 146 (2d Cir. 2005) ..................................................11, 13, 14, 15

*Picard v. Katz*,
462 B.R. 447 (S.D.N.Y. 2011) ................................................................24

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ............................................................................10, 11

**Federal Cases cont.**

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993) ............................................................ 6, 14

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
    490 U.S. 477 (1989) ............................................................................ 6

*Sabir v. Williams*,
    37 F.4th 810 (2d Cir. 2022) .............................................................. 21

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ............................................................................ 6

*Scholastic, Inc. v. Harris*,
    259 F.3d 73 (2d Cir. 2001) ............................................................... 18

*SEC v. American Bd. of Trade, Inc.*,
    654 F. Supp. 361 (S.D.N.Y. 1987) .................................................... 16

*Shoshone Indian Tribe v. US*,
    364 F.3d 1339 (Fed. Cir. 2004) ........................................................ 23

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    127 S. Ct. 1184 (2007) ............................................................. 7, 9, 10

*Stix v. Commissioner*,
    152 F.2d 562 (2d Cir. 1945) ............................................................. 19

*TD Ameritrade, Inc. v. Kelley*,
    No. 15 Civ. 714(PAC)(FM) (S.D.N.Y. Sept. 30, 2016),
    *reconsidered  and confirmed* (S.D.N.Y. Mar. 10, 2021) .................. 24, 25

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................................ 6

*US Bank Nat. Association v. Bank of America, NA*,
    916 F.3d 143 (2d Cir. 2019) ............................................................... 5

*US v. Szur*,
    289 F.3d 200 (2d Cir. 2002) ............................................................. 20

**Federal Cases cont.**

*Viking River Cruises, Inc. v. Moriana*,

    142 S. Ct. 1906 (2022)....................................................................6, 7, 13

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. U.*,

    489 U.S. 468, (1989) ...............................................................13

*Willcox v. Consolidated Gas Co.*,

    212 U. S. 19, 40 (1909) ............................................................6

**New York State Cases**

*Andersen v. Weinroth*,

    48 A.D.3d 121 (1st Dept 2007) ...............................................23

*Dawes v. J. Muller & Company*,

    176 A.D.3d 473 (1st Dept 2019) ............................................18

*Dubbs v. Stribling & Assoc.*,

    96 N.Y.2d 337 (N.Y. 2001) ....................................................20

*Flaum v. Birnbaum*,

    120 A.D.2d 183 (4th Dept. 1986)............................................20

*Frame v. Maynard*,

    83 A.D.3d 599 (1st Dept 2011) ...............................................23

*Frethey v. Durant*,

    24 A.D. 58 (1897)...................................................................19

*Haight v. Haight & Freese Co.*,

    112 A.D. 475 (1906), *affd*, 190 N.Y. 540 (1907)...................17

*Johnson v. Winslow*,

    279 N.Y.S. 147 (N.Y.Co.1935), *affd*, 246 A.D. 800 (1st Dept 1936),
    *affd*, 272 N.Y. 467 (1936).......................................................17

## New York State Cases cont.

*Jordan v. Underhill*,
  91 A.D. 124 (1904)...........................................................................17, 19, 27

*Koppel v Wien, Lane & Malkin*,
  125 A.D.2d 230 (1st Dept 1986) ....................................................18, 21

*Miske v. Berdon*,
  189 A.D.2d 594 (1st Dept. 1993) ...........................................................22

*Morgulas v. J. Yudell Realty, Inc.*,
  161 A.D.2d 211 (1st Dept 1990) ............................................................18

*Mullin v. WL Ross & Co. LLC*,
  173 A.D.3d 520 (1st Dept 2019) ............................................................18

*Potomac Ins. Co. v. Kelly*,
  173 A.D. 791 (1916)................................................................................19

*Rhodes v. Little Falls Dairy Co.*,
  230 A.D. 571 (1930) *affd*, 256 N.Y. 559 (1931) ...................................17

*Rubenstein v. Small*,
  273 A.D. 102 (1947)................................................................................18

*Stevens v. St. Joseph's Hospital*,
  52 A.D.2d 722 (4th Dept 1976)..............................................................18

*Webster v. Forest Hills Care Ctr., LLC*,
  164 A.D.3d 1499 (2d Dept 2018)............................................................18

## Nebraska State Cases

*Timberlake v. Douglas County*,
  865 N.W.2d 788, 291 Neb. 387 (2015)...................................................16

## U.S. Statutes

9 U.S.C. § 1 et seq. [Federal Arbitration Act]........2, 6, 7, 8, 9, 11, 13, 14, 15

9 U.S.C. § 2 ......................................................................6

9 U.S.C. § 3 .............................................................6, 8, 9, 15

9 U.S.C. § 4 .............................................................6, 8, 9, 15

15 U.S.C. § 77p...............................................................17

15 U.S.C. § 78a et seq. [Exchange Act 1934] .............................17

15 U.S.C. § 78bb ..............................................................17

## Rules and Regulations

17 C.F.R. § 240.15c3-3, SEC Rule 15c3-3 .................................16

FINRA Rule 12203 ............................................................4

## SEC Administrative

*In the Matter of Merrill Lynch*, et.al.,

    Exchange Act Rel. No. 78141 (June 23, 2016) ......................16

## Treatise And Restatements

Restatement (Third) of Agency (2006) ......................................21

## INTRODUCTION

My Second Amended Complaint ("SAC") states a claim for an accounting. My SAC affirmatively and plausibly alleges facts that establish my relationship with Appellee TD Ameritrade Clearing Inc. ("TDAC") is fiduciary. Under common law, I am entitled to the remedy of a full and complete accounting by TDAC of the funds and securities TDAC is <u>currently</u> holding on my behalf.

The facts are simple. As evidenced by the monthly account statements TDAC provides me, I am currently a customer of TDAC and TDAC holds my funds and securities in trust for me. TDAC does not deny our relationship is fiduciary. Encompassed within TDAC's common law fiduciary duties of loyalty and care, is TDAC's duty to provide me a full, complete, and accurate accounting of the funds and securities TDAC is <u>currently</u> holding on my behalf.

The district court on August 18, 2022 made legal errors dismissing my SAC in favor of arbitration. First, under the terms of our arbitration agreement, my SAC is properly filed in court. The arbitration forum TDAC and I specifically bargained for in our agreement is not presently available to resolve our dispute. Our arbitration agreement provides a remedy for when the arbitration

1

forum is not available, and explicitly designates 'court' as a default forum to resolve our dispute. The district court relied on an untenable reading of a March 1, 2021 decision by a previous Second Circuit panel to justify the district court's unreasonable interpretation of our arbitration agreement. Second, TDAC made clear to the district court TDAC was not requesting a remedy provided by the Federal Arbitration Act ("FAA") but only requesting dismissal based on our agreement to arbitrate. The U.S. Supreme Court in *Morgan v. Sundance, Inc*., 142 S. Ct. 1708 (2022) held that federal courts may not alter ordinary procedural rules to favor arbitration over litigation. An agreement to arbitrate is a specialized kind of forum selection clause. The ordinary procedural rule for a federal court to dismiss a case based on any kind of forum selection clause pointing to a nonfederal forum is *forum non conveniens*. Under the doctrine of *forum non conveniens*, a federal court cannot dismiss a case unless the alternate forum is presently available to adjudicate the subject matter of the dispute. Under both the explicit terms of our arbitration agreement, and the ordinary procedural rules federal courts use to enforce a forum selection clause pointing to a nonfederal forum, the district court erred dismissing my SAC in favor of arbitration.

2

I am requesting this court reverse the district court's dismissal in favor of arbitration, remand my case back to the district court and direct the district court to enter an order for TDAC to provide a full and complete accounting of the funds and securities TDAC is currently holding on my behalf.

## ARGUMENT

Branding me a serial litigant and declaring my claims frivolous is unfairly prejudicial and unwarranted. The claims in my SAC, and accounting I seek are not frivolous, barred by res judicata, or barred by a statute of limitations. *See* Opening Brief, Doc 26, ECF pp. 17-19, 29-51, 53-57. Since 2010, TDAC has had nine (9) opportunities to discharge, in court or arbitration, its affirmative fiduciary duty to provide me a full, complete, and accurate accounting of the funds and securities TDAC is holding on my behalf. Instead of providing the requisite accounting, TDAC chose a litigation strategy of procedural ping-pong where TDAC obtains decisions that bandy me back and forth between court and arbitration to delay a court or arbitrator ordering TDAC discharge its fiduciary duty to render a full and complete accounting of the funds and securities TDAC is holding on my behalf. *See* Opening Brief, Doc 26, ECF pp. 33-40, 42, 53-55.

3

This court can put an end to TDAC's game of procedural ping-pong.[1] "Persons involved in a dispute are ordinarily entitled to have access to a court for the resolution of the dispute." *Metropolitan Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019). "The courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). In contrast, private arbitration forums are under no obligation to accept a case or provide redress to any party. The Financial Industry Regulatory Association ("FINRA") sponsors such a private arbitration forum. FINRA itself does not arbitrate the disputes, rather FINRA is the administrator of the forum with the power to deny any party, including TDAC and its customers, the use of its arbitration forum to resolve any dispute by arbitration. *See* FINRA Rule 12203.[2]

---

[1]    *See Christianson v. Colt Industries Operating Corp*., 486 U.S. 800, 815-19 (1988); *Id*. at 818 ("Even more exasperating for the litigants (and wasteful for all concerned) is a situation where, as here, the litigants are bandied back and forth helplessly between two courts, each of which insists the other has jurisdiction.").

[2]    *See* Opening Brief, Doc. 26, ECF pp. 12-13, 34-36, 55; *Cohen v. UBS Financial Services, Inc*., 799 F.3d 174, 176 (2d Cir. 2015).

The district court was aware that prior to filing my SAC in federal court, I submitted it to FINRA's arbitral forum and FINRA notified me that the subject matter of my dispute was not eligible for arbitration.[3] Under the law of the case doctrine, FINRA was the first "forum" to decline subject matter jurisdiction over the claims in my SAC, thus my SAC was to remain in district court for adjudication.[4] Under the law of the case doctrine, a federal court has the power to stop TDAC playing its shell game to avoid accountability.[5]

**a. Forum Selection Clauses**.

"Federal courts have a virtually unflagging obligation to exercise the jurisdiction given to them." *Cavanaugh v. Geballe*, 28 F.4th 428, 429 (2d Cir. 2022). Plaintiffs' right "to choose a Federal

---

[3]    *See* Opening Brief Doc. ECF 26, pp. 12-13, 36; J.Appx I at 0047-48, 0109-0111 ECF 9 (SAC) ¶¶ 68, 69 & Exhibit 9 pp. 83-85.

[4]    *See Christianson*, 486 U.S. at 817 ("[T]he Federal Circuit, in transferring the case to the Seventh Circuit, was the first to decide the jurisdictional issue. . . . Thus, the law of the case was that the Seventh Circuit had jurisdiction, . . .not the Federal Circuit").

[5]    *See US Bank Nat. Association v. Bank of America, NA*, 916 F.3d 143, 153 (2d Cir. 2019) ("Allowing the case to remain in the Southern District of New York, notwithstanding that the Indiana court's transfer order was based on a mistake of law, is a far lesser evil than subjecting the parties to the further expense and delay of a retransfer, with the attendant risk of still further rounds of transfers.").

court where there is a choice cannot be properly denied." *Willcox v. Consol. Gas Co*., 212 U.S. 19, 40 (1909).[6] A forum-selection clause is "[a] contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them." Black's Law Dictionary (11th ed. 2019). A mandatory and exclusive forum selection clause does not oust the court of its jurisdiction over the parties or the claims.[7]

For half a century, the U.S. Supreme Court has described agreements to arbitrate as a specialized kind of forum selection clause.[8] The FAA embodies a federal policy supporting enforcement of a "specialized kind" of forum selection clause. 9 U.S.C. §§ 2, 3, 4;

---

[6]     *See Meredith v. Winter Haven*, 320 U.S. 228, 234 (1943) (The purpose of diversity jurisdiction was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts.").

[7]     *See The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 12 (1972); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997) ("[P]arties have no power by private contract to oust a federal court of jurisdiction otherwise obtaining.").

[8]     *See* Opening Brief, Doc. 26, ECF pp. 17-28; *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 482-83 (1989); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 n.2 (2d Cir. 1993); *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 (2022).

*Viking River*, 142 S. Ct. at 1919. But TDAC's Motion to Dismiss requested a remedy (dismissal) the FAA does not provide,[9] and thus the court was to follow the same procedures the court would for any other forum selection clause that points to a nonfederal forum. In *Atlantic Marine*, it was settled that the ordinary procedural mechanism to dismiss a case based on a forum selection clause pointing to a nonfederal forum is *forum non conveniens*.[10] The district court's August 18, 2022 decision that the claims in my SAC must be adjudicated in an arbitral forum rather than court, is analogous to a decision based on *forum non conveniens*.[11]

---

[9]    *See* Opening Brief, Doc. 26, ECF p. 15 (On May 24, 2022 TDAC clarified in footnote 1, that "the only relief sought in TDAC's motion is dismissal of this Case", and that "TDAC has not requested an order compelling arbitration") (Appx. II at 0508 [ECF 27]).

[10]    *See Atlantic Marine Const. v. US Dist. Court*, 134 S. Ct. 568, 580 (2013) ("[C]ourts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.").

[11]    *See Dr. Robert L. Meinders v. United Healthcare Ser's*, 7 F.4th 555, 561 n.7 (7th Cir. 2021). ("The district court's order of dismissal represented its decision that this dispute belongs in the arbitral forum selected by the parties, not the court. Such a dismissal is analogous to one based on forum non conveniens."); *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1192 (2007) (Dismissal based on the doctrine of forum non conveniens "is a determination that the merits should be adjudicated elsewhere.").

### 1. Rule 12(b)(6) vs *Forum Non Conveniens*.

At the motion to dismiss stage, *forum non conveniens* is the procedural mechanism federal courts are directed to use to enforce a forum-selection clause pointing to a nonfederal forum. *See Atlantic Marine*, 134 S. Ct. at 580-83 & n.8 (2013).[12] The doctrine of *forum non conveniens* is derived from "[a] federal court's inherent power to decline to entertain a case over which it has jurisdiction." *DiRienzo v. Philip Services Corp.*, 232 F.3d 49, 56 (2d Cir. 2000). "[T]he doctrine is one of pragmatism and flexibility rather than rigid, bright-line rules." *DiRienzo*, 232 F.3d at 61. Like § 3 and § 4 of the FAA, the federal doctrine of *forum non conveniens* provides a procedural mechanism for a court to determine whether the parties have pre-selected some forum other than federal court as the proper forum to

---

[12]  *See* Opening Brief, Doc. 26, ECF pp. 20-28; *Fasano v. Li*, 47 F.4th 91, 105 (2d Cir. 2022). ("[A] forum-non-conveniens motion is not 'a motion under' Rule 12"); *Daou v. BLC Bank, SAL*, 42 F.4th 120, 128 n. 3 (2d Cir. 2022) ("The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." (citing and quoting *Atlantic Marine*)); *Banca Di Credito v. Small*, No. 20-285-cv (2d Cir. Mar. 19, 2021) (same); *Donnay USA Ltd. v. Donnay Int'l SA*, 705 Fed. Appx. 21 (2017). (same); *MBC Fin. Servs Ltd. v. Boston Merch. Fin. Ltd.*, No. 16-3704-cv (2d Cir. Aug. 23, 2017) (same); *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014). (same).

resolve their dispute.[13] Rule 12(b)(6) is not designed for that purpose.

Rule 12(b)(6) is designed to test the sufficiency of the complaint. If

the court considers matters outside the complaint, the court must treat

the 12(b)(6) motion as one for summary judgment, whereas under

*forum non conveniens* the Court may consider materials outside the

complaint and hold hearings to resolve disputed matters.[14] Even

before *Atlantic Marine*, the Second Circuit approved the use of *forum*

*non conveniens* to dismiss a case in favor of arbitration.[15]

---

[13]     *See Sinochem*, 127 S. Ct. at 1192 (2007) (Dismissal based on the doctrine of *forum non conveniens* "is a determination that the merits should be adjudicated elsewhere."); 9 U.S.C. §§ 3, 4 provide the procedure for a court to determine whether to issue a requested § 3 stay of the court proceedings, or the § 4 remedy of specific performance. Both the FAA and *forum non conveniens* provide procedural protections for the nonmoving party.

[14]     *See* Federal Rule 12(d) *Goel v. Bunge, Ltd*., 820 F.3d 554, 558-560 (2d Cir. 2016) (discussing purpose of Rule 12(b)(6) and the Rule 12(d) conversion requirement); *Martinez*, 740 F.3d at 216-17, 222 (discussing the doctrine of *forum non conveniens* evidence and wide range of contract law issues a court confronts).

[15]     *See Maria Victoria Naviera, SA v. Cementos del Valle*, 759 F.2d 1027, 1031 (2d Cir. 1985) ("We hold squarely that district courts have the power to dismiss a petition to compel arbitration on the ground of *forum non conveniens*"); *In Re Arbitration Between Monegasque De Reassurances v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 496 (2d Cir. 2002). ("The doctrine of *forum non conveniens*, a procedural rule, may be applied in domestic arbitration cases brought under the provisions of the Federal Arbitration Act").

9

Furthermore, dismissal under *forum non conveniens* is a non-merits ground for dismissal;[16] whereas dismissal under 12(b)(6) is not.[17] The uncertainty inevitably created by a court tacking on a 'without prejudice' label to a 12(b)(6) dismissal is compounded by a district court that impermissibly weighs in on the merits.[18]

### 2. Forum Non Conveniens.

"The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum." [19] "[The] analysis does not concern itself with the reason why an

---

[16]     *See Sinochem*, 127 S. Ct. at 1192 (2007) (Dismissal based on the doctrine of *forum non conveniens* is a nonmerits ground for dismissal. It is a determination that the merits should be adjudicated elsewhere.).

[17]     *See Brownback v. King*, 141 S. Ct. 740, 748 (2021) (A "ruling under Rule 12(b)(6) concerns the merits [of an action]").

[18]     *See* Opening Brief, Doc. 26, ECF pp. 18, 21, 53-57; *AT & T Technologies, Inc. v. Communications Worker*s, 475 U.S. 643, 649-650 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. . . Whether arguable or not, indeed even if it appears to the court to be frivolous. . . [t]he courts, [] have no business weighing the merits of the grievance"); *Henry Schein v. Archer and White Sales*, 139 S. Ct. 524, 529 (2019) (same).

[19]     *Bank Of Credit And Commerce v. Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981).

alternative foreign forum is no longer available; its singular concern is the fact of present availability." *Norex Petroleum Ltd. v. Access Industries*, 416 F.3d 146, 159 (2d Cir. 2005). "[A] case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." *Norex*, 416 F.3d at 159; *Piper*, 454 U.S. at 254 n. 22 (same).

### 3. The TDAC Client Agreement.

The TDAC Client Agreement is not a contract negotiated between two sophisticated parties, rather it is a form contract drafted by TDAC for the broad universe of potential TDAC customers who may someday entrust TDAC, a Securities and Exchange Commission ("SEC") registered FINRA and SIPA member carrying broker, with their funds and securities for the purpose of buying and selling securities. None of the claims in my complaint allege TDAC breached any provision of a past or present Scottrade, Ameritrade, or TDAC customer agreement. However, on February 8, 2022 TDAC filed a Motion to Dismiss based on two affirmative defenses and in the alternative requested dismissal in favor of arbitration pursuant to our arbitration agreement (and the FAA). The operative arbitration

11

agreement that binds TDAC and I is embedded in the September 2021

TDAC Client Agreement (¶ 12), *see* Opening Brief, Doc. 26, ECF p.

22.[20] TDAC also filed an SDNY Local Rule 12.1 Notice [ECF 19]

that TDAC's Motion to Dismiss was relying on matters outside my

SAC. *See* J.Appx. I & II at 0169-0316 [ECF 16, 17, 18, 19].

When TDAC filed its Motion to Dismiss, TDAC was aware

that on August 1, 2021 I had submitted my SAC to FINRA's arbitral

forum and that on August 5, 2021 FINRA notified me that the

services of FINRA's arbitration forum were not available to resolve

the claims in my SAC.[21] TDAC submitted sixteen (16) exhibits

attached to its Motion to Dismiss — none demonstrate that FINRA's

arbitration forum (or any arbitration forum) was presently available to

arbitrate our dispute under "the provisions of the Code of Arbitration

---

[20]    Scottrade and Ameritrade (now TDAC) have updated their customer agreements multiple times in the eighteen (18) years since I opened my accounts in 2004. The Scottrade and Ameritrade accounts I opened in 2004 are now held by TDAC as the result of a series of assignments and/or commercial transactions, the major ones being: in 2007 TD Waterhouse merged with Ameritrade and became known as TD Ameritrade (TDAC); in 2018 TDAC acquired Scottrade; and in 2021 Charles Schwab acquired TDAC.

[21]    *See* Opening Brief Doc. ECF 26, pp. 12-13; J.Appx I at 0047-48, 0109-0111 ECF 9 (SAC) ¶¶ 68, 69 & Exhibit 9 pp. 83-85.

of the FINRA".[22] It was TDAC's burden to demonstrate to the court

an arbitration forum was presently available.[23]

### 4. Morgan v Sundance.

While TDAC's Motion to Dismiss in favor of arbitration was

pending, the U.S. Supreme Court decided *Morgan v. Sundance, Inc*.,

142 S. Ct. 1708 (May 23, 2022).[24] In *Morgan*, the Court held that

federal courts "may not make up a new procedural rule based on the

FAA's policy favoring arbitration," *Morgan*, 142 S. Ct. at 1714. Less

than one month later the Supreme Court reaffirmed its description of

an arbitration agreement as "a specialized kind of forum-selection

clause" *Viking River*, 142 S. Ct. at 1919. The holding in *Morgan*

applies to any procedural rule ordinarily used to enforce forum

---

[22]     *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. U*., 489 U.S. 468, 479 (1989) ("Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted.");

[23]     *See Bank Of Credit And Commerce*, 273 F.3d at 248; *Norex*, 416 F.3d at 159 (same); *Abdullahi v. Pfizer, Inc*., 562 F.3d 163, 189 (2d Cir. 2009) (same); As the U.S. Supreme Court notes, a forum-selection clause is not an entitlement to avoid suit altogether. *See* Opening Brief, Doc. 26, ECF p. 27 & n. 8.

[24]     Prior to the district court issuing its August 18, 2022 decision, I informed the district court of the U.S Supreme Court decision in *Morgan v Sundance*. *See* J.Appx. II at 0527-0529 [ECF 32].

selection clauses. Nothing in the text of the FAA justifies treating

dismissal based on an arbitration clause any differently from any other

kind of forum-selection clause. When the contracted for arbitration

forum is not presently available, regardless the reason why, dismissal

in favor of arbitration is just as impermissible as it would be for any

other kind of forum selection clause.[25]

An SDNY Local Rule 12.1 Notice is like a Schrödinger Cat

experiment.[26] A pro se party does not know whether it is dealing with

a Rule 12(b)(6) motion or Rule 56 motion until the district court

issues its decision (the box is opened). Attaching a Rule 12(b)(6) label

to the district court's decision to grant TDAC's motion to change

forums, does not excuse the district court from "closely examining all

---

[25]    *Abdullahir*, 562 F.3d at 189-90; *Norex*, 416 F.3d at 159-160
("[A] case cannot be dismissed on grounds of forum non conveniens
unless there is presently available to the plaintiff an alternative forum
that will permit it to litigate the subject matter of its dispute."); *Roby*,
996 F.2d at 1362 n.2 ("The analysis is no different for the arbitration
clauses. Indeed, an arbitration clause is merely a specialized type of
forum selection clause."); *Martinez*, 740 F.3d at 219 (same).

[26]    *See* https://www.alittlebithuman.com/schrodingers-cat-
explained-like-im-five/ ("In Schrodinger's cat experiment, the
unfortunate kitty represents a quantum particle. Since the cat is
unobserved until the box is opened, the cat can be in a superposition
of dead and alive until the box is opened, at which point it will either
take the state of being dead or alive.").

submissions related to the adequacy of the [alternate] forum," *Bank Of*

*Credit And Commerce*, 273 F.3d at 248.[27]

> Accordingly, the district court, if it decides to dismiss, should condition dismissal on the [alternate forum] accepting jurisdiction over this case. In specifying this condition, we do not mean to impose any requirement on the [alternate forum], a step that would be beyond our authority. We are simply requiring the district court to permit [plaintiff] to restore this case to the district court's docket in the event that the [alternate forum] determines that it lacks jurisdiction.

*Bank Of Credit And Commerce*, 273 F.3d at 247-248.[28] In the wake of

*Morgan v Sundance*, the district court's interpretation of the prior

court decisions is an untenable interpretation, as is TDAC's.[29]

---

[27]     *See* S.Appx. at 010-011 [ECF 36, pp. 5-6 "Accordingly, the Court applies the Rule 12(b)(6) standard to Defendant's Motion."].

[28]     *See Nederlandse Erts-Tankersmaatschappij v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964) (conditioning stay in federal court on the arbitration forum accepting jurisdiction); *Koreska v. Perry-Sherwood Corp.*, 253 F. Supp. 830 (S.D.N.Y. 1965) ("Since the arbitral tribunal established under the contract has found that disputes between Koreska and Perry-Sherwood are not arbitrable thereunder, the former is free to seek its remedy in a court of competent jurisdiction.") affd 360 F.2d 212 (2d Cir. 1966).

[29]     In the previous case under review by the Second Circuit panel, TDAC was seeking relief under §§ 3 & 4 of the FAA, the doctrine of *forum non conveniens* was never addressed; *Norex*, 416 F.3d at 160 ("Implicit in such a conclusion (and in any attending forum non conveniens dismissal) is a finding that the foreign jurisdiction is as presently capable of hearing the merits of plaintiff's claim,").

15

### b. Appellee TDAC's Fiduciary Relationship With Customers.

When TDAC accepts for deposit customer funds and securities for the purpose of buying and selling securities on the customers behalf, TDAC is establishing a fiduciary relationship where TDAC is agreeing to act as the customer's <u>agent-trustee</u>.[30] TDAC has acted continuously as my <u>agent-trustee</u> since I funded my accounts in 2004. The district court's dismissal of my SAC in favor of arbitration was based on an unreasonable reading of our arbitration agreement.[31]

---

[30]   *See* Opening Brief Doc. 26, ECF pp. 12, 18-19, 31; *SEC v. American Bd. of Trade, Inc*., 654 F. Supp. 361, 367 (S.D.N.Y. 1987) ("It is unnecessary to conclude that a trust relationship was originally established by the brokerage agreement because funds or property coming into the hands of an agent are held in trust by the agent for the principal."); (*In the Matter of Merrill Lynch, Pierce*, Exchange Act Rel. No. 78141, Admin. Proc. File No. 3-17312 at 2 (June 23, 2016) ("Broker-dealers are required to be diligent stewards of the cash and securities entrusted to them by their customers. This basic principle is embodied in Exchange Act Rule 15c3-3, known as the Customer Protection Rule."); *In re Lehman Bros., Inc*., 791 F.3d 277, 283 (2d Cir. 2015) ("This fiduciary relationship, in turn, arises out of the broker's obligation to handle the customer's assets for the customer's benefit.").

[31]   *See* Opening Brief, Doc. 26, ECF pp.21-28; *Timberlake v. Douglas County*, 865 N.W.2d 788, 795, 291 Neb. 387 (2015). ("A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent."); *Id*. ("If a particular contract interpretation renders a material provision meaningless, that construction is inconsistent with the parties' intent.").

Fiduciary law, and the concomitant remedy of an accounting,

were well established at the time Congress enacted the Securities

Acts.[32] Nothing in the legislative history of the Exchange Act 1934

indicates Congress intended to narrow a brokers disclosure

obligations, or a customer's right to the remedy of an accounting.[33]

---

[32]   *Jordan v. Underhill*, 91 A.D. 124, 128 (1904) ("Where the agency is of such a character as creates in the agent a trusteeship the principal therein becomes a cestui que trust, and the obligation of the agent to the principal is fiduciary in character."); *Haight v. Haight & Freese Co*., 112 A.D. 475 (1906)  affd, 190 N.Y. 540 (1907) (headnote) ("When one advances money to stockbrokers to invest in securities, the relation is fiduciary and equity will take jurisdiction of an action brought against the brokers for an accounting."); *Rhodes v. Little Falls Dairy Co.*, 230 A.D. 571, 573-74, (1930), affd, 256 N.Y. 559, (1931) (stating that obligation to render an accounting is triggered by proof that plaintiff entrusted property to defendant in fiduciary relationship); *Johnson v. Winslow*, 279 N.Y.S. 147 (N.Y.Co.1935), affd, 246 A.D. 800 (1st Dept 1936), affd, 272 N.Y. 467 (1936), after stating that the broker assumed a fiduciary role with respect to its customer, *id*. 279 N.Y.S. at 159, the court stated that the broker was obligated to "fully inform his customer concerning material facts of a transaction." *Id*. 279 N.Y.S. at 160.

[33]   *See Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980) ("[T]here is no warrant for believing that Section 20(a) was intended to narrow the remedies of the customers of brokerage houses or to create a novel defense in cases otherwise governed by traditional agency principles. On the contrary Section 28(a), 15 U.S.C. § 78bb, specifically enacts that the rights and remedies provided by the '34 Act shall be in addition to any and all rights and remedies that may exist at law or in equity, and Section 16 of the '33 Act, 15 U.S.C. § 77p, similarly provides that the rights and remedies of the '33 Act are additional to pre-existing remedies.").

**c. Sufficiency Of My SAC**.

My SAC states a claim for an accounting.[34] I affirmatively and plausibly allege in my SAC [¶¶ 37- 48] that a fiduciary relationship currently exists between TDAC and myself in two distinct respects; first as my <u>agent-broker</u>, and second as my <u>agent-trustee.</u> My current account statements evidence TDAC currently holds property on my behalf as my agent-trustee. I put in the record my November 2021

---

[34]     *See* Opening Brief, Doc. 26, ECF pp. 31-32, 40-49; *McMann v. SEC*, 87 F.2d 377, 378 (2d Cir. 1937) ("A broker is indeed an agent, and as such a fiduciary."); *Rubenstein v. Small*, 273 A.D. 102, 104-05 (1947) (The court found, a fiduciary relationship respecting the use of plaintiff's funds was created, which placed on defendant the duty to account for his use of the funds. Therefore, the court found a cause of action for the equitable remedy of accounting had been pled.); *Stevens v. St. Joseph's Hospital*, 52 A.D.2d 722, 723 (4th Dept 1976); *Koppel v Wien, Lane & Malkin*, 125 A.D.2d 230, 234 (1st Dept 1986) (absolute right to an accounting); *Morgulas v. J. Yudell Realty, Inc.*, 161 A.D.2d 211, 213 (1st Dept 1990) ("An allegation of wrongdoing is not an indispensable element of a demand for an accounting where the complaint indicates a fiduciary relationship between the parties or . . ."); *Scholastic, Inc. v. Harris*, 259 F.3d 73, 90-9 (2d Cir. 2001); *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 275 (2d Cir. 2006) ("Nor need a plaintiff in a fiduciary relationship with the defendant allege any wrongdoing [in a request for an accounting]"). *Webster v. Forest Hills Care Ctr., LLC*, 164 A.D.3d 1499, 1501 (2d Dept 2018) (absolute right to an accounting); *Mullin v. WL Ross & Co. LLC*, 173 A.D.3d 520, 522 (1st Dept 2019) (The right to an accounting "is automatic and springs from the fiduciary relationship itself."); *Dawes v. J. Muller & Company*, 176 A.D.3d 473, 474 (1st Dept 2019). ("The mere existence of a fiduciary relationship gives rise to a claim for an accounting.").

Account Statements because those were the most recent "Statements

of Account" TDAC provided me prior to filing my SAC in federal

court on December 9, 2021.[35]

> The fact that he rendered statements from time to time, which
> were retained without objection, does not deprive the plaintiff of
> its right to have a full and complete  account of defendant's
> dealings if it so desires. ( Jordan v. Underhill, 91 [A.D.] 124;
> Frethey v. Durant, 24 [A.D.] 58.) To obtain an accounting it is
> not necessary for the plaintiff to show that anything will be found
> due. It is sufficient that the relation exists between the parties and
> this entitles the plaintiff to a full and complete statement of
> defendant's acts as agent.

*Potomac Ins. Co. v. Kelly*, 173 A.D. 791, 792-93 (1916).

> So, in the present case, while it is true that the accounts purport
> to be a statement of all of the dealings with the property showing
> that the plaintiffs have received the benefits of such dealing and
> of all of the property which came to the agent's hands, yet,
> nevertheless, the plaintiffs do not know except from this
> statement of the accounts what the real facts are. Such facts they
> have a right to have disclosed in the fullest manner, and in order
> to accomplish such result they became entitled to examine the
> trustee under oath to the fullest extent, as in no other way can the
> facts be arrived at with absolute certainty and to such certainty
> the cestui que trust is entitled. No action can be deemed vexatious
> which seeks to accomplish such result.

*Jordan v. Underhill*, 91 A.D. 124, 128-29 (1904).[36]

---

[35]  *See* J.Appx. I at 0137-0140, 0147-0151, 0156-0159, 0163-0167
[ECF 14, Exhibits 11-14 (November 2021 Account Statements)].

[36]  *Stix v. Commissioner*, 152 F.2d 562, 563 (2d Cir. 1945) ("No
language, however strong, will entirely remove any power held in
trust from the reach of a court of equity").

My securities accounts are nondiscretionary, but that fact does not diminish TDAC's duty to account, or TDAC's duty to disclose to me information relevant to TDAC's agency.[37]

The district court did not identify any pleading defects in my SAC,[38] instead, the district court curiously denied me leave to amend on futility grounds despite my having pled in my SAC all the necessary facts to state a claim for an equitable accounting, which is a cause of action recognized by courts since ancient times. For a statute of limitation to have even arguably run on my right to the remedy of an accounting, my TDAC securities accounts must be closed (for

---

[37]    *See* Opening Brief Doc. 26, ECF pp. 42, 50 & n. 41; *Flaum v. Birnbaum*, 120 A.D.2d 183, 194 (4th Dept. 1986) ("A fiduciary has "the obligation to show affirmatively not only that they acted in good faith but that they volunteered to the beneficiaries every bit of information which personal inquiry by the beneficiaries would have disclosed"); *Dubbs v. Stribling & Assoc.*, 96 N.Y.2d 337, 341 (N.Y. 2001) (fiduciaries have a duty to "disclose any information that could reasonably bear on plaintiffs' consideration" of a transaction); *US v. Szur*, 289 F.3d 200, 211-212 (2d Cir. 2002) (securities broker owes customer a fiduciary duty to disclose); *Levitt v. JP Morgan Securities, Inc.*, 710 F.3d 454, 467 n.9 (2d Cir. 2013) ("We note, however, that courts have found that fiduciary relationships and their concomitant duty to disclose may be established by state or federal law.").

[38]    *See Loreley Financing No. 3 v. Wells Fargo Securities*, 797 F.3d 160, 190-91 (2d Cir. 2015) (leave to amend cannot be denied without judicial guidance as to "the precise defects" in a complaint.).

several years). As evidenced by my December 2022 Account

Statements, my TDAC accounts are not closed. *See* Opening Brief,

Doc. 26, ECF pp. 45-49, 53-57.

> [R]egardless of whether or not all of the relevant facts are already known to plaintiffs, it is clear that whenever there is a fiduciary relationship between the parties, as is the situation here, there is an absolute right to an accounting notwithstanding the existence of an adequate remedy at law.

*Koppel v. Wien, Lane & Malkin*, 125 A.D.2d 230, 234 (1st Dept 1986); Restatement (Third) of Agency § 8.12 cmt. b.

### d. Appellee TDAC's Affirmative Defenses.

 "[A] defendant presenting an [affirmative] defense on a Rule

12(b)(6) motion instead of a motion for summary judgment must

accept the "more stringent standard applicable to this procedural

route." *Sabir v. Williams*, 37 F.4th 810, 823 (2d Cir. 2022). "Not only

must the facts supporting the defense appear on the face of the

complaint. . . . the motion may be granted only where it appears

beyond doubt that the plaintiff can prove no set of facts in support of

his claim that would entitle him to relief." *Id*. "On a motion to

dismiss, the plaintiffs are entitled to all reasonable inferences from the

facts alleged, not only those that support their claim, but also those

that defeat the [affirmative] defense." *Id*.

As for the dates and facts the district court and TDAC argue support the conclusion that all my state-law claims are untimely or barred by res judicata, there are flaws in their reasoning, and errors in their recitation of the facts. *See* Opening Brief, Doc. 26, ECF pp. 29-51, 56-57. First, my TDAC accounts remain open and are subject to examination, under oath, any time I desire. Second, with respect to allegations in my SAC of <u>undisclosed</u> fiduciary misconduct spanning sixteen (16) years, without an accounting a court or arbitrator does not have the necessary facts to determine what fiduciary misconduct occurred, or whether *res judicata* or a statute of limitations applies.[39]

> It is axiomatic that a [fiduciary] must always fully disclose material information to [those owed a fiduciary duty]. Withholding material information from investors or others may be as wrongful as affirmatively misrepresenting such information. Subsequently learning that earlier communications were false and failing to correct them also may be a breach of the duty of loyalty because of a lack of candor. (internal citations omitted).

*In re Soundview Elite Ltd*., 594 B.R. 108, 127-29 (Bankr. S.D.N.Y. 2018) (Vyskocil, Mary Kay, J.)

---

[39]     *See* Opening Brief, Doc. 26, ECF pp. 43-44, 48-51, 53-57; *Miske v. Berdon*, 189 A.D.2d 594, 595-96 (1st Dept. 1993) ("An accounting must be completed in this matter before it can be determined whether the proposed fifth and sixth causes of action may be maintained.")

For statute of limitation purposes "[i]nquiry notice imposes an obligation of reasonable diligence." *Cohen v. SAC Trading Corp.*, 711 F.3d 353, 362 (2d Cir. 2013). The diligence requirement is reduced when a party relies on a fiduciary.[40] The district court was aware of my investigative efforts, and my efforts to bring suit sooner — in fact the district court branded me a serial litigant for doing so.[41]

As I state in my SAC, since September 2005, in addition to sixteen (16) years of monthly Account Statements, in response to my inquiries, TDAC assured me in writing, that TDAC is holding 2,420,000 shares of Bancorp International Group Inc. ("Bancorp") on my behalf in "street name" at the Depository Trust Company ("DTC"). TDAC disclosed no information to me, (before, during, or

---

[40]     *See* Opening Brief, Doc. 26, ECF pp. 43, 49; *Frame v. Maynard*, 83 A.D.3d 599, 602 (1st Dept 2011) ("[B]eneficiaries of [a] fiduciary relationship, [are] entitled to rely on [the fiduciary's] representations and his complete, undivided loyalty, and [are] not required to perform independent inquiries in order to reasonably rely on their fiduciary's representations"); *Andersen v. Weinroth*, 48 A.D.3d 121, 136 (1st Dept 2007) (same); *Shoshone Indian Tribe v. US*, 364 F.3d 1339, 1347-48 (Fed. Cir. 2004) (same); *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518-519  (2d Cir. 2001) (same).

[41]     *See Cohen v SAC*, 711 F.3d at 363 ("[I]nquiry notice is triggered by awareness of facts which a reasonable person would investigate; it is not triggered by unfounded suspicions.").

after the 2011 and 2014 arbitration decisions), that rendered my

reliance on my TDAC Account Statements or TDAC's assurances

unreasonable.[42] Up until the March 10, 2021 decision in the *Kelley*

case,[43] my own investigation uncovered nothing that rendered my

reliance on my Account Statements unreasonable.[44]

It was not until the March 10, 2021 decision in the *TD*

*Ameritrade v Kelley* case that I began to suspect, as I allege in my

SAC, that the credits to my Account Statements for 2,420,000 shares

of Bancorp represent impossible transactions. It was because of the

---

[42]    *See* J.Appx. I at 0039-0040 [ECF 9 (SAC), ¶¶ 46-48] Most of
TDAC written response to my inquiries are not in the record, but I
refer to them in my SAC because they may evidence TDAC disclosed
half-truths instead whole truths. My 2005 trade confirmations are in
the record and they serve to memorialize the terms of the trade, but
they are not confirmation the transactions settled. My trade
confirmations clearly show some of my ORDERS for Bancorp shares
were placed after August 11, 2005, which is under the DTC global lock
was in effect. *See* J.Appx. I at 0132-0136, 0142-0146, 0153-0155,
0160-0162 [ECF 14, Exhibits 11-14 (2005 trade confirmations)]

[43]    *TD Ameritrade, Inc. v. Kelley*, No. 15 Civ. 714 (PAC)(BCM)
(S.D.N.Y. Mar. 10, 2021).

[44]    *See Picard v. Katz*, 462 B.R. 447, 455 (S.D.N.Y. 2011)
(Rakoff, J) ("In these ordinary circumstances, it is undisputed that a
securities investor has no inherent duty to inquire about his
stockbroker [or] launch an investigation of his broker's internal
practices — and how could he do so anyway?").

facts disclosed in the March 10, 2021 decision that I made my June 20, 2021 written request on TDAC to adjust my accounts to reflect the facts disclosed in the *Kelley* case.[45] TDAC sat on its hands until I filed this suit for an accounting in federal court on December 9, 2021.

In their Reply Brief, as they did in their Memorandum filed in district court [ECF 18], TDAC lawyers state:

> Harris's Bancorp shares are held electronically in "street name" for Harris through the indirect holding system administered by Depository Trust Company ("DTC"), . . .

*See* TDAC Reply Brief, Doc. 42, ECF p. 9.

That purported statement of "fact" by TDAC's lawyers has never been supported by any evidence. TDAC's lawyers are not competent to attest to that fact. Until TDAC provides the requisite evidence of its holdings on my behalf in the DTC administered indirect holding system, and competent attestations, I have no way to verify the accuracy of my TDAC Account Statements, and neither does any court or arbitrator.

TDAC attempts (again) to obtain res judicata and statute of limitations rulings through the back door. TDAC states in its Reply

---

[45]     *See* Opening Brief, Doc. 26, ECF pp. 12-13, 39, 50-51; J.Appx. I at 0040-0048 [ECF 9, ¶¶ 48-70].

Brief, that the district court "held" (and previous courts "held") my claims against TDAC were barred by res judicata and statute of limitations, *See* TDAC Reply Brief, ECF 42, p. 8 (Issues Presented) & pp. 20-25, when in fact, neither the district court, any previous court, or FINRA made any such ruling. No court is permitted to make such a ruling when the court decides to dismiss in favor of arbitration. If this court decides to affirm the district court's dismissal in favor of arbitration, this court must disavow Judge Vyskocil's improperly rendered opinions on the merits of TDAC's defenses.

The district court's statements that I am a serial litigant, my claims are frivolous, and that I am abusing the judicial process are unfairly prejudicial and unwarranted.[46] Since 2010, TDAC has had nine (9) opportunities to discharge, in court or arbitration, its affirmative fiduciary duty to provide me a full and complete accounting of the funds and securities TDAC is holding on my behalf. Since 2014, the 'judicial process' allowed TDAC to play a shell game and delay rendering to me, under oath, in court or arbitration, a full

---

[46]     *See* S.Appx. at 0006, 0021, 0023 [ECF 36, pp. 1, 16, 18] ("Harris is a serial litigant…. like this suit itself, is highly frivolous . . . Plaintiff is warned that continued abuse of the judicial process may result in limitations on her filing privileges in future cases.").

and complete accounting. "[S]uch facts [I] have a right to have disclosed [by TDAC] in the fullest manner [under oath]. No action can be deemed vexatious which seeks to accomplish such result." *Jordan v. Underhill*, 91 A.D. 124, 128-29 (1904).

## CONCLUSION

The district court committed errors of law, fact, and judgment dismissing my SAC in favor of arbitration. Under the terms of our agreement, my SAC is properly filed in court. Further, there is no basis in law or fact for any court or arbitrator to find my right to the remedy of an accounting is frivolous, barred by res judicata, or not timely filed. I am requesting this court remand my case back to the district court and direct the district court to enter an order for TDAC to provide a full and complete accounting of the funds and securities TDAC is currently holding on my behalf.

Respectfully submitted,

/s/ Jan Harris

Jan Harris
*Pro se Plaintiff/Appellant*
101 Aupuni Street, Apt. 420
Hilo, HI 96720
541.207.4026
jhk29@hotmail.com

## CERTIFICATE REGARDING COMPLIANCE WITH
## TYPE-VOLUME LIMITATION

This Reply Brief complies with the type-volume limitation of Local Rule 32(a)(4)(B). The Brief contains 6,920 words according to Microsoft Word's Word Count tool.

This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a). The Brief has been prepared using Microsoft Word 2016 in a 14-point Times New Roman font.

Dated: January 10, 2023

/s/ Jan Harris

Jan Harris

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 10, 2023, I served by email the following counsel of record in Case No. 22-1968, *Harris v TD Ameritrade Clearing Inc*. the Reply Brief of Appellant Jan Harris.

Eric Rieder
Laith J. Hamdan
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, NY 10104-3300
Tel: (212) 541-2000
erieder@bclplaw.com
Laith.Hamdan@bclplaw.com
Attorneys for Defendant/Appellee
TD Ameritrade Clearing, Inc.

/s/Jan Harris

Jan Harris